ISMAEL GONZÁLEZ y OTROS, demandantes y recurrentes, *v.* THE COMMONWEALTH INSURANCE COMPANY y OTROS, demandados y recurridos, y RAÚL MARÍN, tercero demandado y recurrido; ISMAEL GONZÁLEZ LATORRE ET AL., demandantes y recurridos, *v.* THE COMMONWEALTH INS. CO. ET AL., SOUTH CONTINENTAL INS. AGENCY, INC. y OTROS, demandados y recurrentes.

*Números:* RE-89-362          *Resueltos:* 2 de mayo de 1996
RE-89-346

*Pablo Carrasquillo*, abogado de los demandados y recurrentes; *Noberto Medina Zurinaga*, de *Quilichini, Oliver, Medina & Gorbea*, abogado de los demandantes y recurrentes; *Juan J. Vilella Janeiro*, del *Bufete Alex González*, abogado del tercero demandado y recurrido; *José A. González Villamil*, abogado de la codemandada y recurrida.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

Cada uno de los recurrentes en estos dos (2) recursos que hemos consolidado nos solicitan la revisión de una sentencia que les halló incursos en igual grado de responsabilidad por los daños sufridos por el recurrente Ismael González Latorre,[1] asegurado de la otra recurrente, la compañía aseguradora, The Commonwealth Insurance Company.

Procedemos a confirmar la sentencia del tribunal de instancia, con ciertas modificaciones.

I

Exponemos a continuación los hechos sobresalientes de este caso. El mecánico Iluminado Figueroa Pérez se presentó al negocio del señor González Latorre para presen-

---

[1] El señor González Latorre falleció el 18 de octubre de 1984. Sus hijos, Ana del Carmen e Ismael González Lebrón, y su viuda, Ana L. Lebrón, quienes eran partes originales en el caso de epígrafe, le sustituyeron como parte.

tarle una factura por sus servicios y requerirle el pago. Por razones que no podemos precisar, la discusión entre ambos se tornó violenta, al punto de que ambos hombres se fueron a los puños.

En reclamo de compensación por los daños ocasionados por los golpes que recibió en dicha pelea, el señor Figueroa Pérez demandó al señor González Latorre en el Tribunal Superior, Sala de San Juan. La demanda incluía una sola alegación de hechos: "Que allá para el día 21 de agosto de 1973, el demandante se personó al lugar donde lleva a cabo sus negocios el demandado, sito en la Carretera #21 jurisdicción de Río Piedras, Puerto Rico, y mientras el demandante se encontraba allí fue objeto de una brutal golpiza [sic] por parte del demandado." Caso Núm. RE-89-346, Apéndice, pág. 411.

El señor González Latorre fue emplazado el 28 de mayo de 1974. Tres (3) días después, su corredor de seguros, Raúl Marín, envió el informe del accidente y requirió para su cliente la debida representación legal mediante una carta que cursó a La Estrella Insurance Agency, Inc. (en adelante La Estrella), agente de The Commonwealth Insurance Company (en adelante la Commonwealth), empresa aseguradora que había expedido pólizas de responsabilidad pública general (*Comprehensive General Liability*), de responsabilidad personal general (*Comprehensive Personal Liability*) y de daños físicos de automóviles (*Automobile Physical Damage Insurance*) a favor del señor González Latorre. El señor Marín indicó en su misiva que, *según los hechos expuestos por el señor González Latorre*, la alegación de la demanda estaba cubierta por las disposiciones de las pólizas referentes a las " 'Operaciones' del negocio". Caso Núm. RE-89-346, Apéndice, pág. 43.

Ni el señor González Latorre ni la Commonwealth comparecieron a defenderse de la reclamación, por lo que el Tribunal Superior, Sala de San Juan (Hon. Roberto Schmidt Monge, Juez), dictó una sentencia en rebeldía que le

ordenó al señor González Latorre a satisfacer la suma de dieciséis mil dólares ($16,000), lo que hizo el 13 de diciembre de 1977, luego de que le fuera embargada una cuenta bancaria.

Por motivo de lo anterior, el señor González Latorre, por sí y en representación de la sociedad de bienes gananciales y sus dos (2) hijos, Ana e Ismael González Lebrón, demandaron a la Commonwealth y a South Continental Insurance Agency, Inc. (en adelante South Continental), empresa que adquirió todos los activos de La Estrella, para que reembolsaran la cantidad pagada en compensación al señor Figueroa Pérez.([2]) En la demanda alegaron que tanto Commonwealth como La Estrella incumplieron con su obligación de asumir la representación legal del asegurado, al dejarlo en un estado de total vulnerabilidad e indefensión ante las reclamaciones del señor Figueroa Pérez.

Mientras se tramitaba este asunto ante el tribunal de instancia, el Comisionado de Seguros de Puerto Rico (en adelante el Comisionado) compareció por la Commonwealth, en calidad de administrador-liquidador de ésta, luego de que el extinto Tribunal Superior, Sala de San Juan (Hon. Carmen Sonia Zayas, Juez), ordenara la liquidación de dicha aseguradora por insolvencia.

Luego de tratar, sin éxito, que el tribunal de instancia desestimara la demanda por falta de jurisdicción y de obtener sentencia sumaria a su favor, el Comisionado presentó una demanda de coparte contra South Continental y de tercero contra el señor Marín. En ésta les imputó haber creado la impresión de que los daños causados por la pelea estaban cubiertos por la póliza, lo que debieron haber sabido y comunicado al señor González Latorre para que éste

---

([2]) El señor González Latorre originalmente también había solicitado una compensación por los daños físicos y emocionales que alegó haber sufrido cuando se enteró de que se había dictado una sentencia en su contra y que ésta se ejecutaría contra sus bienes. Las alegaciones fueron retiradas tras la Conferencia con Antelación al Juicio celebrada el 17 de febrero de 1988.

hiciera las gestiones necesarias para procurar su representación legal. El Comisionado negó que existiera una cubierta bajo la póliza referida y que hubiera tenido la obligación de responder a la carta del señor Marín o a notificarle al señor González Latorre que los daños no estaban cubiertos por la póliza.

Habiendo concluido el descubrimiento de prueba, el tribunal celebró la vista en su fondo los días 13 de septiembre de 1988 y 23 de enero de 1989, en la que las partes acordaron someter el caso por las estipulaciones.

El Tribunal Superior, Sala de San Juan (Hon. William Fred Santiago, Juez), dictó la sentencia el 8 de mayo de 1989, en la que halló incursos en negligencia tanto al señor González Latorre como a la Commonwealth. Según el tribunal, "[c]uando una compañía aseguradora recibe una solicitud para que asuma la representación legal de un asegurado que ha sido demandado, tiene la obligación afirmativa de representarlo o informarle las razones por las cuales, no le dará representación". Caso Núm. RE-89-346, Apéndice, pág. 111. Concluyó que la inacción de la aseguradora constituyó "un acto negligente así como un incumplimiento de un deber contractual implícito". Determinó, además, que el señor González Latorre también incurrió en conducta negligente al no haber "efectu[ado] gestión alguna encaminada a averiguar qué estaba pasando con el caso, en el cual había sido emplazado", conducta que no reflejaba la prudencia y razón que se espera de una persona demandada. Íd., pág. 113. Impuso a cada uno el cincuenta por ciento (50%) de responsabilidad, por lo que ordenó a la Commonwealth a pagar la mitad de la sentencia dictada contra el señor González Latorre. El tribunal no halló conducta negligente por parte de South Continental o del señor Marín. También impuso a la Commonwealth el pago de honorarios de abogado a favor de los demandantes, mil dólares ($1,000), a South Continental, quinientos dólares ($500) y el señor Marín, quinientos dólares ($500).

Fijó también a la parte demandante el pago de honorarios a South Continental, mil dólares ($1,000).

De dicha sentencia recurren en revisión los herederos del señor González Latorre y el Comisionado.

## II

Expedimos en ambos recursos el correspondiente auto de revisión y ordenamos su consolidación para examinar los señalamientos de errores que nos plantean las partes.

El Comisionado alega la comisión de los errores siguientes: (1) concluir que es negligente el silencio y la inacción de una aseguradora ante el reclamo de un asegurado de que asuma representación legal, cuando la primera entiende que no hay deber de representar; (2) haberle impuesto el cincuenta por ciento (50%) por negligencia; (3–4) no haber reconocido el comportamiento negligente del señor Marín y La Estrella en no haberle expuesto con claridad al señor González Latorre que los daños no estaban cubiertos por la póliza y que, por consiguiente, no podía esperar que la Commonwealth le defendiese judicialmente, y (5) al fijarle el pago de honorarios de abogado.

Los herederos del señor González señalan, por su parte, que el tribunal de instancia erró: (1) al imponerle el cincuenta por ciento (50%) de negligencia, cuando la Commonwealth nunca le imputó negligencia al señor González Latorre y la prueba y el derecho no justificaban dicha determinación; (2) al imponerles el pago de honorarios de abogado, y (3) al no aclarar que los intereses de la sentencia se devengarían a partir de la presentación de la demanda.

## III

Examinamos, primero, los deberes y las obligaciones de una parte y su asegurador cuando se solicita del último

que asuma la representación legal de la anterior, los cuales están recogidos en los primeros dos (2) señalamientos de error que nos plantea el Comisionado.

El Comisionado alega que la póliza que expidió la Commonwealth a favor del señor González Latorre excluía de la cubierta todo daño intencional o delictivo, por lo que la Commonwealth no estaba obligada a defender al señor González Latorre debido a que la causa de acción se fundamentaba en los daños causados por la agresión del asegurado al demandante Figueroa Torres, un acto a la vez intencional y delictivo. La teoría que promueve el Comisionado es que como la Commonwealth no tenía el deber de asumir la defensa del señor González Latorre, tampoco estaba obligada a notificarle que no asumiría su representación legal. Su posición implica que contestar a un requerimiento de representación legal sólo constituye un deber cuando el asegurador está obligado a representarlo. Visto de otra forma, que la notificación en réplica al asegurado sólo es exigible cuando es afirmativa. El Comisionado funda su conclusión en las disposiciones de la póliza expedida por la Commonwealth y en el derecho aplicable, ninguno de los que, según alega, establecen un deber de notificar al asegurado.

■ El hecho de que las leyes, y en particular el Código de Seguros de Puerto Rico, guarden silencio o no obliguen expresamente a un asegurador a notificar al asegurado si asumirá o no su representación legal, no impide que sea exigible mediante otras fuentes de derecho. Tanto el asegurado como su asegurador pueden obligarse mutuamente a un sinnúmero de prestaciones a las que no están requeridos por la ley, incluyendo las de obligarse a mantenerse mutuamente informados de cualquier eventualidad que afecte la póliza. Precisamente, una de las características de los contratos es que pueden constituirse como fuentes de derechos y de obligaciones particulares, no expuestas por disposiciones legales y que sólo obligan a las partes.

Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372. Ahora bien, la ausencia de una disposición *específica* en la ley o en el contrato no afecta la controversia aquí involucrada.

█ El Comisionado invoca nuestros pronunciamientos en el caso de *Mun. of San Juan v. Great Ame. Ins. Co.*, 117 D.P.R. 632 (1986), en respaldo de su argumento de que el ordenamiento no le obliga a notificar al asegurado de su decisión. La situación de hechos que figuraba en dicha controversia era la siguiente: el Municipio de San Juan, cuya solicitud de representación legal fue ignorada por su asegurador, reclamó luego de este último que satisficiera los honorarios de abogados en que incurrió para defenderse. Resolvimos, en una certificación remitida por el Primer Circuito del Tribunal de Apelaciones federal, que el silencio o la inacción del asegurador debía interpretarse como un rechazo de cubierta a los fines de determinar si estuvo justificada la contratación del abogado hecha por el Municipio de San Juan para defenderse de la reclamación en ese caso.

Contrario a la posición que sostiene el Comisionado, en *Mun. of San Juan v. Great Ame. Ins. Co.*, supra, la aseguradora tenía la obligación contractual de brindar una representación legal al asegurado. En consecuencia, en ese caso procedía equiparar el silencio de la aseguradora con el rechazo de ésta a brindar dicha representación pues, tanto guardando silencio como notificando el rechazo al asegurado, la aseguradora hubiera incumplido con su deber contractual. Sin embargo, no procede tal equiparación en este caso, pues aquí la notificación del rechazo no viola ningún deber de la aseguradora, *mientras que el silencio viola el deber de todos de obrar de buena fe.* Así mismo lo entendió el tribunal apelativo. *Mun. of San Juan v. Great American Ins. Co.*, 813 F.2d 520 (1er Cir. 1987).

█ La causa de acción por incumplimiento del deber contractual de asumir la representación legal de un asegu-

rado ha sido ampliamente discutida y reconocida en nuestro ordenamiento. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881 (1994); *Pagán Caraballo v. Silva, Ortiz*, 122 D.P.R. 105 (1988); *Vega v. Pepsi-Cola Bot. Co.*, 118 D.P.R. 661 (1987); *Morales Garay v. Roldán Coss*, 110 D.P.R. 701 (1981). Para que exista este deber se requiere que él haya sido establecido en el contrato, *Pagán Caraballo v. Silva, Ortiz*, supra, pág. 110, y que "de una interpretación liberal de las alegaciones surja la posibilidad de que el asegurado est[é] protegido por la póliza expedida ...". *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, pág. 896. El incumplimiento con dicha obligación puede configurarse de varias maneras, una de las cuales es el silencio o la inacción ante una solicitud para que asuma la representación *cuando existe el previo deber de representar*, como expresamos en *Mun. of San Juan v. Great Ame. Ins. Co.*, supra. Ello no implica, sin embargo, que el asegurador no tiene la obligación exigible e independiente de notificar al asegurado de que no le proveerá una representación legal. Esto es, que aun en aquellos casos en que el asegurador no esté obligado a asumir la representación legal del asegurado, no estará liberado de notificar a éste de su negativa a proveer tal representación cuando éste se la ha solicitado.

■ Si bien un deber de notificación puede establecerse contractualmente de la misma manera en que el asegurador se obliga a proveer una representación legal, hallamos que dicho deber se encuentra arraigado dentro del principio de la buena fe de los contratantes. Los contratantes están obligados a obrar recíprocamente con buena fe, a pesar de que no haya una disposición específica que los obligue a ello. Art. 1210 del Código Civil, *supra*. Véase *Ocasio Juarbe v. Eastern Airlines, Inc.*, 125 D.P.R. 410 (1990). Todo contrato tiene "como pilar principal el principio de la buena fe contractual". *Arthur Young & Co. v. Vega III*, 136 D.P.R. 157, 170 (1994). Los contratos de seguros no son la

excepción. Véanse: *Mun. of San Juan v. Great Ame. Ins. Co.*, supra, pág. 637; 14 *Couch on Insurance 2d (Ed. rev.)* Sec. 51:78, págs. 565–566 (1982).

La buena fe crea deberes especiales de conducta "exigibles en cada caso, de acuerdo con la naturaleza de la relación jurídica y con la finalidad perseguida por las partes a través de ella". L. Díez-Picazo, prólogo en F. Wiecacker, *El principio general de la buena fe*, Madrid, Ed. Civitas, 1983, pág. 19, citado con aprobación en *Arthur Young & Co. v. Vega III*, supra. Véanse: *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339, 346 (1989); *Ramírez, Segal & Látimer v. Rojo Rigual*, 123 D.P.R. 161, 174–175 (1989); *López de Victoria v. Rodríguez*, 113 D.P.R. 265, 270–271 (1982); M.J. Godreau Robles, *Lealtad y buena fe contractual*, 58 Rev. Jur. U.P.R. 367 (1989). De acuerdo con dicho principio, el asegurador tiene un deber de actuar con buena fe hacia el asegurado (y, naturalmente, a la inversa), cuyo deber queda definido y delimitado por las circunstancias y los fines que persiguen los seguros y, en particular a este caso, la razón de ser del deber de representación.

█ El Comisionado alega que la notificación es exigible sólo en su aspecto afirmativo; esto es, únicamente cuando se ha tomado la decisión de asumir la representación. Dicha interpretación no hace distinción alguna entre los deberes de notificar y de representar, a la vez que obvia el propósito básico que sirve a la respuesta del asegurador, *que es permitir que el demandado enfrente y se defienda de la reclamación en su contra* a la mayor brevedad y con la mejor preparación posible.

Sostener que la notificación ha de quedar condicionada a que la póliza provea una cubierta para la reclamación de que se trate y, por consiguiente, para la representación legal del asegurado, no tendría efecto alguno con respecto al asegurado. Esto es así, ya que cuando el asegurador está obligado a asumir tal defensa todo lo que hace es defender sus propios intereses, por razón de que será su patrimonio

el que quedará afectado por una sentencia adversa al asegurado, la cual no tendrá que ser satisfecha por éste y sí por el asegurador.

Precisamente, por todo lo contrario es que el asegurador está obligado a notificar a su asegurado de su rechazo a asumir la representación de éste cuando entiende que la póliza en cuestión no cubre la reclamación. En ese supuesto es que verdaderamente queda afectado el patrimonio del asegurado por una sentencia adversa en su contra, no a la inversa. Tal notificación no sólo le provee al asegurado la oportunidad de gestionar la representación legal por su cuenta, según ya hemos indicado, sino que también le da la oportunidad de reclamar contra su asegurador, en el mismo pleito mediante los mecanismos de demanda contra tercero o demanda de coparte, cuando entiende que éste le es responsable a él y a la parte demandante de la reclamación instada en su contra y de los gastos en que haya incurrido para defenderse de dicha reclamación, incluyendo los honorarios del abogado que haya contratado para ello.

La ausencia de una obligación de representar puede ser clara para el asegurador y estar justificada según los términos de la póliza, pero según los criterios de razonabilidad puede no ser evidente a los ojos del asegurado. Por ello, es imperativo que el asegurador exponga con claridad su posición y permita que el asegurado procure oportunamente su propia defensa. En dicha necesidad queda revelada la diferencia crucial entre la obligación de representar y la de notificar que ignora el Comisionado, que la última puede ser exigible aun cuando la primera no lo sea.

El interés del ordenamiento en evitar la indefensión del asegurado como sucedió en este caso, en que nadie comparece a defender al asegurado, queda evidenciado en la razón de decidir de *Mun. of San Juan v. Great Ame. Ins. Co.*, supra, y *Fernández v. Royal Indemnity Co.*, 87 D.P.R. 859 (1963).

El deber de notificar a un asegurado está "implícito" en el contrato de seguros, como bien dijera el tribunal de instancia, como imperativo del deber de obrar con buena fe. Por lo tanto, "un asegurador debe notificar al asegurado de su intención de rechazar la responsabilidad y de su negativa a defender[lo], de manera que tenga tiempo razonable para defenderse a sí mismo". (Traducción nuestra.) 7C *Appleman Insurance Law and Practice* Sec. 4686, pág. 168 (1979). Véase *Couch*, supra, Sec. 51:103, pág. 603. Algo tan sencillo como una carta a los efectos de que no se asumirá la defensa, basta para cumplir con dicha obligación. Concluimos, por consiguiente, que el asegurador que injustificadamente guarde silencio ante un reclamo *razonable* de representación legal no actúa de buena fe.

## IV

Para poder analizar la inacción de la Commonwealth a la luz de su deber de obrar con buena fe, tenemos que pasar juicio sobre la razonabilidad de la solicitud que le hiciera el señor González Latorre; esto es, si tenía una expectativa razonable de que estaría cubierto por la póliza.

El Comisionado alega que era obvio y evidente que la indemnización por los daños solicitada por el señor González Latorre no estaba cubierta. Primero, porque los daños intencionales quedaban excluidos de la cubierta en la póliza y, segundo, porque la ley prohíbe proveer un seguro contra las consecuencias penales de un delito y el acto que generó la causa de acción fue el delito de agresión. Art. 11.020 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 1102(1).

Los daños resultantes de una agresión o pelea no quedan excluidos automáticamente de la cubierta, aun cuando las partes hayan estipulado en la póliza la exclusión de los daños intencionales. El deber de representar surge cuando existe la posibilidad de que el daño pueda

estar cubierto, y la norma prevaleciente haya sido que "el asegurador está obligado a defender una acción por agresión a través de una póliza de responsabilidad a pesar de la *exclusión de agresión y actos intencionales*, ya que los hechos podrían justificar una determinación judicial fundamentada en la mera conducta negligente del asegurado, que estaría cubierta por la póliza". (Traducción nuestra.) *Couch*, supra, Sec. 51:42, pág. 453. Por consiguiente, el mero hecho de que en la demanda se exponía una causa de acción fundamentada en una alegación general de agresión no hacía evidente la ausencia de cubierta. Íd.

■ Lo mismo ocurre con el Art. 11.020 del Código de Seguros de Puerto Rico, *supra*.(³) Un asegurador no tiene la obligación de proveer una representación legal para defender al asegurado de una conducta delictiva; por lo que, normalmente, un reclamo fundamentado en tal conducta es irrazonable, ya que es evidente que no está cubierto por la póliza. Ahora bien, la concesión de representación legal a un asegurado para la defensa de una reclamación en su contra por daños resultantes de una actuación intencional, constitutiva de delito, no tiene en todo caso que estar comprendida dentro de la prohibición del Artículo 11.020, *supra*. *Pagán Caraballo v. Silva, Ortiz*, 122 D.P.R. 105, 111–112 (1988); *Morales Garay v. Roldán Coss*, 110 D.P.R. 701, 705–706 (1981). En particular, cuando las alegaciones en la demanda son ambiguas en torno a la naturaleza delictiva de la causa de acción, el asegurador no puede ampararse en una interpretación conveniente de los hechos expuestos para denegar una cubierta. *Pagán Caraballo v. Silva, Ortiz*, supra, págs. 112–113.

(³) El artículo expresa, en lo pertinente:

"Sujeto a las disposiciones de este título, un contrato de seguro podrá hacerse con respecto a cualquier objeto y los riesgos en el mismo expresados, en cuanto a los cuales existe posibilidad de damnificación [sic] e interés asegurable, excepto que:

"(1) No se asegurará a ninguna [sic] persona contra las consecuencias penales de un delito; pero esta disposición no se entenderá como que prohíbe hacer contratos proveyendo para fianzas y gastos de defensa por delitos resultantes de accidentes de tránsito por tierra, mar o aire." 26 L.P.R.A. sec. 1102.

El señor Figueroa Pérez alegó en su demanda que el señor González Latorre le propinó una "golpiza".(⁴) Dicha actuación por sí sola no reune todos los elementos del delito de agresión, *pues no se alude a la intención del actor.* Art. 94 del Código Penal, 33 L.P.R.A. sec. 4031. Véase D. Nevares-Muñiz, *Código Penal de Puerto Rico: revisado y comentado*, 3ra ed. rev., Hato Ley, Ed. Inst. Desarrollo del Derecho, 1995, págs. 144–145. No excluye la posibilidad de que los golpes que recibió el señor Figueroa Pérez se debieron a la negligencia del señor González Latorre o que este último estuviese cobijado por alguna de las causas de exclusión de responsabilidad penal como lo son el error de hecho y la legítima defensa. Arts. 18–25 del Código Penal, 33 L.P.R.A. secs. 3091–3098. Véase Nevares-Muñiz, *op. cit.*, págs. 30–44. Esta última, la legítima defensa, Art. 22 del Código Penal, *supra*, fue invocada por el señor González Latorre en la versión que dio al señor Marín, quien la plasmó en el Informe de Accidente que recibió la Commonwealth junto con la demanda. Caso Núm. RE-86-146, Apéndice, págs. 44–45.

Ante dicha versión, la conducta intencional o delictiva no surge con claridad de la alegación de la demanda, que es lo que determina el deber de representación del asegurador. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra; *Fernández v. Royal Indemnity Co.*, supra, pág. 863; *Vega v. Pepsi-Cola Bot. Co.*, supra, pág. 665. Tomando en cuenta que las dudas en las alegaciones se resuelven en favor del asegurado, *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, y que existía la probabilidad, aun cuando fuera remota, de que los daños hubiesen estado cubiertos, hemos de concluir que el reclamo de representación que hiciera el señor González Latorre a su asegurador no fue irrazonable, por lo

---

(⁴) La demanda utilizó el término "golpiza", que es un vulgarismo de la palabra "paliza" no reconocido por la Real Academia Española de la lengua castellana. *Diccionario Sopena de dudas y dificultades del idioma*, Barcelona, Ed. Ramón Sopena, 1981, pág. 296. Véase *Diccionario de la Lengua Española*, 21ra ed., Madrid, Ed. Espasa-Calpe, 1992.

que al ignorarlo injustificadamente, la Commonwealth privó a su asegurado de la oportunidad de defenderse de forma adecuada de la reclamación instada en su contra.

## V

Analizamos ahora la determinación del tribunal de instancia al efecto de que el señor González Latorre también fue negligente al haberse recostado en la expectativa de que su aseguradora asumiría su defensa y haber permitido que se dictara una sentencia en rebeldía en su contra.

Los herederos de dicho asegurado alegan que éste no tenía obligación alguna de dar seguimiento al curso legal de la demanda. No tienen razón. Como expresamos en *Mun. of San Juan v. Great Ame. Ins. Co.*, supra, un asegurado no puede sentarse a esperar a que la aseguradora conteste una solicitud para proceder a defenderse de una reclamación. Llega un momento cuando el silencio es indicativo de que la aseguradora no asumirá la representación o se ha tardado tanto que su notificación será académica, pues el proceso no se detiene a esperar por la aseguradora. El asegurado tiene un deber de defenderse cuando su asegurador, con o sin justificación, no lo hace. En *Fernández v. Royal Indemnity Co.*, supra, pág. 64. censuramos la actitud de un asegurado de "cruzarse de brazos". Ante la inacción o el silencio de la aseguradora, el asegurado debe dar su solicitud por rechazada y proceder a defenderse. La inacción del asegurado constituye conducta negligente en nuestro ordenamiento. Véase *Acosta Quiñones v. Matos Rodríguez*, 135 D.P.R. 668 (1994), en el cual en el contexto de la prescripción de una acción en daños reiteramos que los demandantes tienen que ser diligentes en el ejercicio de sus derechos y que "las reclamaciones válidas se accionan inmediatamente y no se abandonan" (citando con aprobación a *Culebra Enterprises Corp. v. E.L.A.*, 127 D.P.R. 943 (1991), entre otros). Igual razona-

miento aplica a un demandado que se cruza de brazos y se le dicta una sentencia en rebeldía.

Aun así, los demandantes recurrentes alegan que la evidencia no justifica concluir que el señor González Latorre actuó de la manera antes indicada.

La prueba demostró que el señor González Latorre nunca compareció al tribunal de instancia. También dejó establecido que fue emplazado personalmente y de acuerdo con la ley, por lo que tenía pleno conocimiento de la demanda y del término en que debía presentar su contestación a ésta, así como de las consecuencias que la falta de una contestación dentro del mencionado término acarrea. Con este conocimiento, el cual se deriva del documento constitutivo del emplazamiento —véase Regla 4.2 de Procedimiento Civil vigentes, 32 L.P.R.A. Ap. III— una persona prudente y razonable hubiera actuado para asegurarse del resultado de la gestión de su corredor de seguros, dando traslado de la demanda y del emplazamiento al agente de la aseguradora, en conjunto con la solicitud de cubierta y de representación legal.

La evidencia demostró que ni la Commonwealth ni su agente, La Estrella, le hubiesen expresado al asegurado que aquélla había asumido la representación legal de éste. A pesar de ello, no se demostró que el señor González Latorre hubiese hecho requerimiento adicional alguno a La Estrella o a la Commonwealth, o les hubiera inquirido sobre el curso de la demanda o el resultado del pleito. Habiendo sido emplazado, tenía a su alcance innumerables maneras de cotejar si su caso estaba siendo atendido. Su pronta actuación le hubiese permitido defenderse de forma apropiada de la reclamación, y haberlo hecho no hubiese constituido una renuncia a exigir indemnización de la Commonwealth. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra; *Pagán Caraballo v. Silva, Ortiz*, supra, pág. 113; *Vega v. Pepsi-Cola Bot. Co.*, supra, pág. 665; *Mun. of San Juan*

*v. Great Ame. Ins. Co.*, supra. Su conducta, sin lugar a dudas, fue negligente.

Alegan los herederos mencionados que, aun habiendo incurrido en conducta negligente, el tribunal de instancia no podía imputarle tal negligencia, ya que el Comisionado no presentó tal defensa en sus alegaciones responsivas. Para disponer de esta alegación, basta señalar que la evidencia presentada en este caso, sin objeción de la parte demandante, tuvo el efecto de enmendar las alegaciones responsivas a los fines de imputar la concurrencia de negligencia al asegurado demandante. Regla 13.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

## VI

Veamos si la conducta de La Estrella y del señor Marín fue también negligente. El Comisionado alega que ambos fueron negligentes al haberle dado falsas expectativas al señor González Latorre de que la Commonwealth asumiría su representación.

Nada en la prueba demuestra que La Estrella o el señor Marín le hubiesen asegurado o, de otra manera, dado expectativas infundadas de que la Commonwealth asumiría su representación legal. El señor Marín meramente expuso su punto de vista en la carta que remitiera a La Estrella junto con el Informe de Accidente. Nada en ella aseguraba o garantizaba al asegurado, u ordenaba al asegurador, a contestar la demanda presentada por el señor Figueroa Pérez. El reclamo de representación, como ya hemos examinado, no era irrazonable ni frívolo, por lo que ni La Estrella ni el señor Marín tenían por qué advertir o adelantar al señor González Latorre que la Commonwealth ignoraría su solicitud.

Por otro lado, el señor Marín, como corredor del asegurado, actuó como mandatario de éste para gestionar la cubierta de representación legal bajo la póliza a base de la

información que le suministrara el asegurado. Dicho corredor descargó al pie de la letra las instrucciones de su mandante, por lo que es improcedente la imputación de responsabilidad en su contra. Véase Art. 1610 del Código Civil, 31 L.P.R.A. sec. 4442.

Confirmamos la absolución de negligencia que hiciera el tribunal de instancia sobre el señor Marín y La Estrella.

## VII

Examinemos si en este caso estuvo justificado el tribunal sentenciador al imponer honorarios de abogado. Los honorarios de abogado se imponen por temeridad. Regla 44.1(d) de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véanse: *Vega v. Luna Torres*, 126 D.P.R. 370 (1990); *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713, 717 (1987). Una parte en un litigio es temeraria cuando demuestra una conducta obstinada, frívola y desprovista de fundamentos, para obligar a la parte contraria a asumir las molestias, los gastos y las inconveniencias de un pleito. *Vega v. Luna Torres*, supra. La conciencia de la "propia sinrazón" que caracteriza a la parte temeraria no debe afectar a quien en buena lid ejerce o defiende sus derechos. *Santos Bermúdez v. Texaco P.R., Inc.*, 123 D.P.R. 351, 355 (1989). Un postulado fundamental de nuestro sistema de administrar la justicia es que "no puede penalizarse a un litigante que utiliza las vías judiciales para vindicar un derecho por el simple hecho de no haber prevalecido en su acción. Así, la norma imperante en nuestro ordenamiento procesal civil establece que la parte victoriosa siempre tiene derecho a recobrar las costas, pero los honorarios de abogado sólo proceden cuando el tribunal determina que la parte perdidosa actuó con temeridad". Íd.

No hallamos que las partes en el pleito de epígrafe, en particular el Comisionado, hayan impedido la pronta solución de este caso, ya fuese procediendo con un litigio que se

pudo evitar, dilatándolo innecesariamente u obligando a las otras partes a incurrir en gestiones evitables. *Fernández v. San Juan Cement Co., Inc.*, supra, págs. 718–719; *Santos Bermúdez v. Texaco P.R., Inc.*, supra, págs. 355–356. El primer paso que tomó el Comisionado luego de ser emplazado fue solicitar la remoción de la controversia al foro administrativo, conducta evidentemente dirigida a agotar otros recursos alternos antes de proceder con un costoso proceso judicial. Véase la Moción de desestimación de 8 de febrero de 1982. Las partes cooperaron en todo momento para la pronta solución de la controversia planteada, preparando una estipulación de hechos y reduciendo la controversia a una de derecho. Además, la solución de la disputa requería la interpretación del derecho aplicable a la situación de hechos, controversia que difícilmente hubiese podido ser dirimida sin la intervención del tribunal. Ante la ausencia de prueba en contrario, no hallamos razones que justifiquen imponer a las partes recurrentes en estos dos (2) casos el pago de honorarios de abogado. Se modificará la sentencia recurrida a los fines de eliminar totalmente la imposición de los honorarios de abogado que hiciera el tribunal de instancia.

## VIII

Así modificada, *se confirma la sentencia dictada en este caso por el extinto Tribunal Superior, Sala de San Juan, el 8 de mayo de 1989. En vista del resultado al que hemos llegado, es innecesario expresarnos con respecto al cómputo de los intereses.*