ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JIMMY OLIVERA JAUME, Apelada, v. **CENTRO DE DIAGNÓSTICO Y TRATAMIENTO PEPINO HEALTH GROUP t/c/c PEPINO HEALTH GROUP**; DR. JUAN SATURNINO ROBLES CARDONA, en su capacidad personal, y su esposa IRIS NIEVES NIEVES, como miembros de la sociedad de bienes gananciales compuesta por ambos, y ella en su capacidad personal y su capacidad oficial; SR. JUAN CARLOS ROBLES NIEVES; UNIVERSAL INSURANCE COMPANY y COMPAÑÍA DE SEGUROS "ABX"; FULANA DE TAL y JOHN DOE, Apelante. | KLAN202400815 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla. Civil núm.: AG2022CV01512. Sobre: daños y perjuicios. |
| **JIMMY OLIVERA JAUME**, Apelante, v. CENTRO DE DIAGNÓSTICO Y TRATAMIENTO PEPINO HEALTH GROUP t/c/c PEPINO HEALTH GROUP; DR. JUAN SATURNINO ROBLES CARDONA, en su capacidad personal, y su esposa IRIS NIEVES NIEVES, como miembros de la sociedad de bienes gananciales compuesta por ambos, y ella en su capacidad personal y su capacidad oficial; SR. JUAN CARLOS ROBLES NIEVES; UNIVERSAL INSURANCE COMPANY y COMPAÑÍA DE SEGUROS "ABX"; FULANA DE TAL y JOHN DOE, Apelada. | KLAN202400832 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla. Civil núm.: AG2022CV01512. Sobre: daños y perjuicios. |

Número identificador

SEN2024_____

Panel integrado por su presidente, el juez Bermúdez Torres, la jueza Romero García y el juez Monge Gómez.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 14 de noviembre de 2024.

Los recursos consolidados del título impugnan la *Sentencia Sumaria Parcial* dictada por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, el 6 de mayo de 2024, notificada el 8 de mayo de 2024[1]. En ella, el foro primario concluyó que las dos pólizas de seguro expedidas por Universal Insurance Company (Universal) a favor del Centro de Diagnóstico y Tratamiento Pepino Health Group, también conocido como Pepino Health Group (CDT), no cubrían las causas de acción alegadas en la demanda. Por lo tanto, el tribunal desestimó la demanda, con perjuicio, en cuanto a la codemandada Universal.

Inconforme, el 5 y 9 de septiembre de 2024, los apelantes, el CDT y el señor Jimmy Olivera Jaume (señor Olivera), respectivamente, instaron estos dos recursos, que fueron consolidados conforme a nuestra *Resolución* del 10 de septiembre de 2024.

Evaluados los recursos y la oposición a los mismos, a la luz del derecho aplicable, **confirmamos** la sentencia sumaria parcial dictada en este caso.

I

Allá para el 12 de octubre de 2022, el señor Olivera presentó una demanda de daños y perjuicios contra los apelados[2]. En ella, alegó que tanto el doctor Juan Saturnino Robles Cardona, quien era el accionista principal del CDT, como su esposa, la señora Iris Nieves Nieves, permitieron que su hijo, el señor Juan Carlos Robles Nieves, mantuviera un **patrón de conducta agresiva** en su contra e interviniera con su trabajo sin

---

[1] Ambos recursos contienen sendos apéndices. **No obstante, en adelante, haremos referencia al apéndice del recurso KLAN202400832, por ser el más completo**. Así pues, véase, apéndice del recurso, a las págs. 1-15.

[2] *Véase*, apéndice del recurso, a las págs. 65-71.

autoridad para ello, aun cuando el señor Olivera les había notificado sobre tal comportamiento.

Además, el señor Olivera relató que, el 24 de diciembre de 2021, mientras realizaba sus labores en la sala de emergencias del CDT, el señor Robles Nieves, **de manera agresiva e irrespetuosa, le acusó de robar y de alterar ciertas facturas**. El apelante sostuvo que, ante los señalamientos del señor Robles Nieves, contestó de manera calmada; sin embargo, al intentar retirarse del área, **fue agredido físicamente por este con tal intensidad que quedó inconsciente**.

El señor Olivera apuntó que este no se trataba de un primer incidente, sino de un patrón de situaciones en las que el señor Robles Nieves, quien asumió un rol de administrador a pesar de no ser empleado del CDT, lo insultaba y se mostraba amenazante o agresivo al solicitar o darle instrucciones. Asimismo, sostuvo que los daños sufridos como consecuencia de los actos del señor Robles Nieves pudieron haber sido evitados por los apelados, quienes tenían conocimiento de que su hijo era una persona violenta y agresiva, que ponía en riesgo a los empleados del CDT.

El señor Olivera adujo, también, que previamente había solicitado protección, verbalmente y por escrito, ante la conducta agresiva del apelado, sin resultado alguno. Entre otros asuntos, puntualizó que dio conocimiento de la situación al CDT, a los miembros de la Junta de directores y al principal accionista codemandado, doctor Robles. Sin embargo, sostuvo que estos no hicieron nada para protegerle de las potenciales agresiones, las cuales, en efecto, culminaron en una agresión física.

Conforme a sus alegaciones, el apelante concluyó que había sufrido daños; entre ellos, la pérdida de visión en el ojo izquierdo, así como daños emocionales.

Luego de varios incidentes procesales, que incluyó la comparecencia ante este tribunal intermedio[3], Universal presentó una solicitud de sentencia sumaria el 10 de octubre de 2023[4]. **Apoyada en las alegaciones de la demanda y en los términos de la póliza**, Universal arguyó que los daños reclamados por el señor Olivera no estaban cubiertos por la póliza núm. 09-560-000641144-2/000, vigente entre el 9 de junio de 2021, al 9 de junio de 2022[5]. Se trata de una **póliza comercial general**, emitida a favor del CDT, la cual contiene un endoso, *Commercial General Liability Coverage Form*, CG 21 47 12 07[6], que **excluye expresamente** reclamaciones originadas por, entre otras, acoso u hostigamiento laboral.

Tras múltiples incidencias procesales, el 8 de marzo de 2024, Universal presentó una moción[7] en la que informó haber recibido una misiva[8] del representante legal del CDT y del doctor Robles y la señora Nieves, en la cual solicitaba "defensa y cubierta" al amparo de la póliza DOL 990-00240. Esta última es una póliza de *Directors and Officers*, también emitida a favor del CDT. Universal adujo que contestó la carta el 15 de septiembre de 2023, e indicó que dicha póliza tampoco cubría la reclamación en cuestión[9]. Puntualizó que reiteraba su solicitud de sentencia sumaria parcial y que suplementaba la misma con el referido escrito.

El 20 de marzo de 2024, el señor Olivera se opuso a la solicitud de sentencia sumaria parcial[10]. Sostuvo que las pólizas mencionadas cubrían en todo o en parte los daños reclamados. Precisó que la póliza comercial general no contenía ninguna cláusula excluyente de daños sufridos a causa

---

[3] Nos referimos a los recursos de apelación y *certiorari*, cuyos alfanuméricos son KLAN202300366 y KLCE202301121.

[4] *Véase*, apéndice del recurso, a las págs. 165-392.

[5] *Íd.*, a las págs. 185-392.

[6] *Íd.*, a la pág. 288.

[7] *Íd.*, a las págs. 490-499.

[8] *Íd.*, a las págs. 495-496.

[9] *Íd.*, a las págs. 497-499.

[10] *Íd.*, a las págs. 404-465.

de un tercero. Añadió que, "aunque entendemos que la póliza 09-560-000641144-2/000 cubre los daños aquí reclamados, en la alternativa[,] la póliza UC99000240 expedida por Universal definitivamente cubre los señalados daños."[11].

El CDT también se opuso a la resolución sumaria del pleito el 27 de marzo de 2024[12]. En su escrito, reprodujo los mismos argumentos señalados por el señor Olivera.

Evaluadas las sendas posturas de las partes litigantes, el 8 de mayo de 2024, el Tribunal de Primera Instancia emitió la sentencia parcial apelada[13]. En virtud de esta, concluyó que las exclusiones de ambas pólizas eran claras y específicas respecto a las alegaciones del señor Olivera, de modo que estas no cubrían las mismas. En consecuencia, el foro primario declaró con lugar la solicitud de sentencia sumaria parcial y desestimó la demanda con perjuicio en cuanto a Universal.

Inconforme, el 20 de mayo de 2024, el CDT presentó una solicitud de reconsideración y determinaciones de hechos adicionales[14]. Sostuvo que varias de las determinaciones de hechos consignadas por el tribunal *a quo* sí estaban en controversia. Además, adujo que el tribunal no podía emitir un dictamen a base de alegaciones que constituían prueba de referencia, por lo que debió haber celebrado una vista evidenciaria o celebrar el juicio en su fondo.

Al día siguiente, 21 de mayo de 2024, el señor Olivera también solicitó la revisión del dictamen emitido[15]. Insistió en que las pólizas sí cubrían la reclamación. Por otro lado, arguyó que la sentencia era prematura, puesto que el descubrimiento de prueba no había culminado.

---

[11] *Véase*, apéndice del recurso, a la pág. 418.

[12] *Íd.*, a las págs. 470-489.

[13] *Íd.*, a las págs. 1-15.

[14] *Íd.*, a las págs. 26-33.

[15] *Íd.*, a las págs. 17-25.

Universal se opuso a ambas solicitudes el 23 de julio de 2024[16]. El 8 de agosto de 2024, el foro primario acogió los planteamientos de esta, por lo que declaró sin lugar los petitorios del CDT y del señor Olivera[17].

Aún insatisfecho, el 5 de septiembre de 2024, el CDT instó este recurso apelativo, en el que le imputó al Tribunal de Primera Instancia la comisión de los siguientes errores:

> Primero: Erró el Honorable Tribunal de Primera Instancia al determinar que la póliza número 560-0641144 (Commercial General Liability) Universal Insurance Company, no provee cubierta para sus asegurados.
>
> Segundo: Erró el Honorable Tribunal de Primera Instancia al determinar que la póliza número DOL 990-0240 (Officers and Directors) emitida [por] Universal Insurance Company, no provee cubierta para sus asegurados.
>
> Tercero: Erró el Honorable Tribunal de Primera Instancia al dictar sentencia parcial sin haber culminado el descubrimiento de prueba.

(Énfasis omitido).

Varios días después, el 9 de septiembre de 2024, el señor Olivera, también inconforme con la determinación del tribunal *a quo*, presentó su recurso apelativo. En este, imputó la comisión de los siguientes errores:

> Primer error: Erró el Honorable Tribunal de Primera Instancia al determinar que el demandante-apelante carece de causa contra Universal Insurance Company porque la póliza no cubre los daños alegados en la demanda a pesar [de] que está envuelto una agresión que automáticamente no puede ser excluida de una póliza general conforme la doctrina establecida en *González v. The Commonwealth*, 140 DPR 673 (1996).
>
> Segundo error: Erró el Honorable Tribunal de Primera Instancia al dictar sentencia sumaria a pesar [de] que no se había concluido el descubrimiento de prueba actuando así contrario a la doctrina establecida por el honorable Tribunal Supremo en el caso *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020) y *Howard Ferrer v. PRTC*, 2022 TSPR 72.
>
> Tercer error: Erró el Honorable Tribunal de Primera Instancia al dictar sentencia sumaria donde existen hechos materiales en controversia que no permiten emitir sentencia, considerando que existe evidencia documental, la cual no permite adjudicarse mediante sentencia sumaria conforme la doctrina establecida en *Rivera v. Rivera Reyes*, 168 DPR 193 (2006) y MGMT. ADM. Servs. Corp. v. ELA, 152 DPR 599, 610 (2000).

---

[16] *Véase*, apéndice del recurso, a las págs. 47-61.

[17] *Íd.*, a las págs. 63-64.

(Énfasis omitido).

Mediante nuestra *Resolución* del 10 de septiembre de 2024, ordenamos la consolidación de ambos recursos.

El 18 de octubre de 2024, Universal presentó su oposición a ambos recursos.

Perfeccionados los recursos consolidados, resolvemos.

II

A

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, regula todo lo concerniente a la sentencia sumaria. Como es sabido, el propósito de este mecanismo procesal es disponer ágilmente de los casos en los que no estén presentes hechos materiales en controversia, que requieran la celebración de un juicio en su fondo. *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 277 (2011).

Para que esta proceda debe surgir preponderantemente de la prueba que acompaña la sentencia sumaria que no existe controversia sobre hechos medulares del caso. *Íd.* Por tanto, cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, sino que tiene que ser una duda que permita concluir la existencia de una controversia real y sustancial sobre los hechos relevantes y pertinentes. *Íd.*

El Tribunal Supremo de Puerto Rico ha "definido un hecho material como aquel que, de acuerdo con el derecho aplicable, puede alterar la forma en que se resuelve un caso". *Íd.*, a la pág. 278. Véase, además, *Zambrana García v. ELA et al.*, 204 DPR 328, 341 (2020), y *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015). Así pues, "[e]n ausencia de una controversia de hechos materiales, el tribunal dictará sentencia si procede en derecho". *Aponte Valentin v. Pfizer Pharmaceuticals, LLC,* 208 DPR, a la pág. 278, y *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1024 (2020).

De otra parte, el Tribunal Supremo ha señalado que no es aconsejable dictar sentencia sumaria en casos cuyas controversias versen

esencialmente sobre asuntos de credibilidad o involucren aspectos subjetivos, como es la intención, los propósitos mentales o la negligencia. *Aponte Valentin v. Pfizer Pharmaceuticals, LLC,* 208 DPR, a la pág. 278. No obstante, esto no impide la utilización del mecanismo de sentencia sumaria en las reclamaciones que requieran elementos subjetivos o de intención cuando de los documentos que habrán de ser considerados en la solicitud de sentencia sumaria surja que no existe controversia en cuanto a los hechos materiales. *Íd.*

Finalmente, al evaluar la procedencia de una sentencia sumaria, los tribunales revisores nos encontramos en la misma posición que el Tribunal de Primera Instancia. *Íd.*; *Rivera Matos et al. v. Triple-S et al.*, 204 DPR, a la pág. 1025; *Meléndez González et al. v. M. Cuebas*, 193 DPR, a la pág. 115. Si los hechos materiales realmente están incontrovertidos, nos corresponde entonces revisar *de novo* si el foro primario aplicó correctamente el derecho. *Íd.* Por lo tanto, "si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria". *Aponte Valentin v. Pfizer Pharmaceuticals, LLC,* 208 DPR, a la pág. 278.

B

En nuestra jurisdicción, la industria del seguro está revestida de un alto interés público, debido a su importancia y al papel vital que juega en nuestra economía y sociedad. Por tal razón, el negocio de las compañías aseguradoras ha sido ampliamente reglamentado por el Estado mediante la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el Código de Seguros de Puerto Rico, 26 LPRA sec. 101, *et seq.* Véase, además, *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 896-897 (2012); *S.L.G. Ortiz-Alvarado v. Great American*, 182 DPR 48 (2011).

Un contrato de seguro es un acuerdo, "mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el

mismo". 26 LPRA sec. 102; *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 384 (2009). Este pacto se configura en un documento escrito conocido como póliza, en el cual se plasman los términos que rigen el contrato de seguro. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR, a la pág. 897. Particularmente, en este tipo de acuerdo, el asegurador asume unos riesgos a cambio de una prima y, así, se compromete a proteger económicamente al suscriptor en caso de que ocurra el evento incierto previsto en el contrato. *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR, a la pág. 384.

Cónsono con la normativa general de todo contrato, los términos, cláusulas y condiciones pactadas constituyen la ley entre las partes. *Íd.* Al momento de surgir controversias respecto a los términos que componen el acuerdo, el propio Código de Seguros establece la directriz por la cual debemos regirnos para ejercer prudentemente nuestra función interpretativa de las cláusulas contenidas en una póliza de seguro. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR, a la pág. 897. Este dispone lo siguiente: "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado […]". 26 LPRA sec. 1125. Aclaramos que, para efectos de los contratos de seguros, los principios generales atinentes a la teoría contractual se utilizarán únicamente como recurso supletorio. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR, a la pág. 898; *Jiménez López et al. v. SIMED*, 180 DPR 1, 8 (2010).

Cabe señalar, además, que el Tribunal Supremo ha resuelto que el contrato de seguro es uno de adhesión, mediante el cual una sola de las partes dicta las condiciones del contrato, y el otro simplemente se limita a aceptarlas. *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR, a la pág. 386. Así pues, por tratarse de un contrato de adhesión, las disposiciones de este deben ser interpretadas liberalmente a favor del asegurado. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR, a las págs. 898-899; *S.L.G.*

*Francis-Acevedo v. SIMED*, 176 DPR, a la pág. 386. Ello corresponde al hecho de que los términos de este contrato, en particular, no son parte de una negociación, sino que están previamente establecidos por el asegurador, quien "tiene la obligación de hacer clara su intención; en otras palabras, viene obligado a establecer en la póliza, de manera diáfana, los riesgos por los que viene obligado a responder". *Íd.*, citando a *Meléndez Piñero v. Levitt & Sons of P.R.*, 129 DPR 521, 547 (1991).

Ante estas circunstancias, los tribunales tenemos el deber de examinar los términos consignados en el acuerdo, y considerar las palabras contenidas en la póliza "en su más corriente y usual significación, sin atender demasiado al rigor de las reglas gramaticales, sino al uso general y popular de las voces". *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR, a la pág. 898. Como parte de la función interpretativa de los tribunales, debemos considerar el sentido y significado que una persona de inteligencia promedio les daría a las cláusulas contenidas en la póliza. *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR, a la pág. 388.

Ahora bien, como parte del análisis global con el que se tienen que interpretar los contratos de seguro, hay que considerar si en lo acordado figura alguna cláusula de exclusión. Estas cláusulas tienen la función de limitar la cubierta provista por la aseguradora, con el objetivo de establecer ciertos eventos, riesgos o peligros por los cuales no responderá. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR, a la pág. 899; *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR, a la pág. 388. En virtud de que el propósito principal de los contratos de seguros es ofrecer la mayor protección a la persona asegurada, estas cláusulas de exclusión se interpretarán restrictivamente para así favorecer al suscriptor ante cualquier ambigüedad existente. *Íd.* Sin embargo, la aseguradora estará libre de responsabilidad por aquellos riesgos expresamente excluidos, si las cláusulas de exclusión son claras y aplican a determinada situación. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR, a las págs. 899-900; *Jiménez López et al. v. SIMED*, 180 DPR, a la pág. 11.

### III

Examinados los escritos de las partes comparecientes y las pólizas en controversia, resulta evidente que la controversia que venimos llamados a dilucidar se limita a determinar si las pólizas número 506-0641144 (*Commercial General Liability*) y la DOL 990-0240 (*Officers and Directors*) adquiridas por el CDT y expedidas por Universal cubren los daños reclamados en la demanda presentada por el señor Olivera.

En su recurso de apelación, el CDT arguyó que Universal, en el contrato de seguros suscrito por las partes, estableció de manera expresa todas aquellas circunstancias que la póliza CGL 560-0641144 excluye y, por ende, no cubre. En cuanto a ello, adujo que, contrario a lo planteado por la aseguradora apelada, de la lectura de la *Section I – Coverages A-Bodily Injury and Property Damage Liability* nada surge que excluya los daños alegados por el señor Olivera, según los reseñamos[18]. Propuso que la insistencia de Universal en negar la cobertura mencionada constituye un incumplimiento del contrato entre las partes. Finalmente, resaltó que, al amparo de *González v. The Commonwealth Ins. Co.*, 140 DPR 673 (1996), el Tribunal Supremo de Puerto Rico resolvió, que aún bajo una póliza general de daños, una agresión no queda excluida automáticamente de la cubierta.

En cuanto a la póliza DOL 990-0240, el CDT planteó que, al emitir su sentencia parcial, el Tribunal de Primera Instancia no se encontraba en posición de hacer una determinación en cuanto a la cubierta de la póliza por no haberse concluido el descubrimiento de prueba, por lo que no se podía determinar el alcance de esta respecto a los directores y oficiales. A su vez, sostuvo que en esta ocasión las cláusulas de exclusión, según establecidas en la referida póliza, no son ejecutables dado que quien se alegó cometió el acto intencional de agresión, no era asegurado. Finalmente, planteó que el contrato de seguros suscrito por las partes era uno de adhesión y, por tanto, cualquier duda debía ser resuelta a favor de

---

[18] *Véase*, apéndice del recurso, a la pág. 263.

la parte asegurada; en este caso, el CDT y los codemandados en su carácter oficial.

En lo pertinente, el señor Olivera afirmó que las alegaciones expuestas en su demanda estaban dirigidas a exponer los daños ocasionados por la negligencia de los directores y oficiales de la corporación al no actuar previo a la agresión, aun cuando se les había solicitado protección ante la conducta del presunto agresor. Así como lo hizo el CDT, recalcó que la supuesta agresión la cometió un tercero, que no era empleado y con quien no existía una relación laboral. En virtud de lo anterior, sostuvo que la póliza DOL 990-0240 sí cubría los daños alegados en la demanda. En la alternativa, propuso que, de existir controversia sobre la inclusión o exclusión de las pólizas, el referido asunto no debía dirimirse mediante el mecanismo procesal de sentencia sumaria.

Por su parte, la compañía aseguradora aquí apelada arguyó que su póliza DOL990-0240, no cubría los daños derivados de la presunta inacción de los directores y oficiales, según alegados en la demanda presentada por el señor Olivera. Reiteró que, conforme las alegaciones que surgían de la demanda, el señor Olivera aludió a la responsabilidad de los codemandados, el CDT y sus accionistas, por no tomar las medidas necesarias respecto a las quejas presentadas por el señor Olivera previo a la presunta agresión. Postuló que ello, conforme a los términos y condiciones establecidos en el contrato de seguro, quedaba expresamente excluido de la cobertura.

Además, Universal planteó que la póliza CGL 506-0641144 contiene una exclusión específica sobre "employment-related practices", la cual impide extender la cubierta de la póliza a una reclamación que, como en este caso, se haya instado al amparo de la Ley Núm. 90-2020, según enmendada, mejor conocida como *Ley para prohibir y prevenir el acoso laboral en Puerto Rico,* 29 LPRA sec. 3111, *et seq*, o al amparo de cualquier otra legislación laboral. En cuanto a los argumentos de la parte apelante sobre lo resuelto en *González v. The Commonwealth Ins. Co.*, 140 DPR

673 (1996), Universal destacó que las situaciones planteadas en ambos casos son distinguibles entre sí, pues, en este caso, se aduce un patrón de acoso laboral permitido y tolerado por el patrono y sus accionistas principales.

Como bien expresó el Tribunal de Primera Instancia en su sentencia parcial, si bien los contratos de seguro son contratos de adhesión y deben interpretarse liberalmente a favor del asegurado, no existe obligación de interpretar a favor del asegurado una cláusula que claramente le da la razón al asegurador, cuando su significado y alcance sea claro y libre de ambigüedades[19]. Así mismo, reiteramos que cada exclusión se lee en función del acuerdo general de cubierta, en este caso de las cubiertas DOL y CGL, independientemente de las restantes. Por tanto, si una exclusión aplica, no existe cubierta, a pesar de las inferencias o cualificaciones que puedan estar presentes en las demás.

Resaltamos que no existe controversia alguna sobre las alegaciones del señor Olivera, según expuestas en su demanda. En ella, pretende atribuir responsabilidad a los oficiales, directores y accionistas del CDT por el patrón de acoso sufrido, que culminó en una agresión física[20].

Además, debemos reiterar que la póliza comercial general emitida por Universal a favor del CDT excluye expresamente reclamaciones originadas por, entre otras, acoso u hostigamiento laboral[21].

A su vez, la póliza de *Directors and Officers Liability* expresamente dispone entre sus exclusiones que la aseguradora no será responsable de pagar por cualquier pérdida que fuera atribuible a una agresión[22].

Así pues, en virtud de lo previamente expresado y al evaluar el alcance de la protección brindada por las pólizas ante nuestra consideración, así como las cláusulas de exclusión establecidas en los

---

[19] El foro *a quo* hizo referencia a la opinión del Tribunal Supremo de Puerto Rico en *López v. Atlantic Southern Ins. Co.*, 158 DPR 562, 569 (2003).

[20] *Véase*, apéndice del recurso, a las págs. 66-67.

[21] *Íd.*, a la pág. 428.

[22] *Íd.*, a la pág. 438.

contratos, concluimos que los términos establecidos son claros, por lo que no podemos atribuir a la aseguradora responsabilidad por los hechos relatados en la demanda[23].

Por tanto, concluimos que el Tribunal de Primera Instancia no erró al declarar con lugar la moción de sentencia sumaria parcial y desestimar la demanda instada en contra de Universal Insurance Company. La determinación apelada ciertamente se ajusta a los términos contractuales establecidos entre el CDT y la aseguradora, los cuales excluyen de su cobertura las alegaciones articuladas por el señor Jimmy Olivera Jaume en su demanda.

IV

Por los fundamentos expuestos, **confirmamos** la sentencia parcial emitida el 6 de mayo de 2024, notificada el 8 de mayo de 2024, por el Tribunal de Primera Instancia, Sala Superior de Aguadilla.

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[23] Acotamos que la industria de seguros reconoce un tipo de póliza que cubre una reclamación laboral instada por un empleado en contra de su patrono. Se trata de la póliza denominada *Employment Practices Liability Insurance* o EPLI, por sus siglas en inglés. Este tipo de póliza protege al patrono contra reclamaciones por despido injustificado, acoso laboral, hostigamiento sexual en el empleo, discrimen, y otras prácticas laborales. A esos efectos, véase, *Insurance Information Institute*, www.iii.org. **Esa póliza no fue adquirida en este caso**.