Pesante Martínez, Juez Ponente
*1073 TEXTO COMPLETO DE LA SENTENCIA
Eduardo Pizarro Villanueva, Norma Cartagena Flores y la sociedad legal de gananciales compuesta por ambos, Fulano y Sutano de Tal y las compañías aseguradoras X, Y y Z, procuran la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, (en adelante, “TPI”) de 12 de noviembre de 2003. Mediante la misma, dicho foro declaró ha lugar la acción de incumplimiento de contrato en cuanto a pago de cambios en la orden, daños y perjuicios y cobro de dinero presentada por la parte apelada Agustín Deynes Villanueva, Inés López Rivera y la sociedad legal de gananciales establecida entre ambos. Además, la sentencia apelada tuvo el efecto de declarar no ha lugar la reconvención instada por la parte apelante, por lo que se condenó a dicha parte, de forma solidaria satisfacerle a los apelados el pago por las cantidades de $27,000 por servicios rendidos y no pagados y $3,000 por concepto de honorarios de abogado, más el pago de costas y gastos, con un interés fijo a razón del 5.25% de interés anual.
Por los hechos pertinentes, con el beneficio de la comparecencia de ambas partes y los fundamentos que expondremos a continuación, procede modificar la sentencia que nos ocupa a los fines de eliminar la imposición del pago de honorarios de abogado. Así modificada, se confirma la sentencia apelada.
I
Los incidentes medulares para atender estos planteamientos, surgen de las determinaciones de hechos de la sentencia apelada, que fueron cuestionadas por las partes y que reproducimos a continuación.
El 3 de enero de 1996, las partes de epígrafe suscribieron y reconocieron ante notario público un contrato de ejecución de obra de una residencia unifamiliar al que denominaron contrato de construcción (en adelante, “el Contrato”). Mediante el mismo, la parte apelada se comprometía y obligaba a construirle al apelante una edificación inicialmente destinada a vivienda en un solar de su propiedad, con una cabida de 1,031.05 metros cuadrados, de la Urbanización Palmas de Turabo, en Caguas, Puerto Rico. El Contrato fue por precio alzado y las partes estipularon que el propietario apelante pagaría al contratista apelado la cantidad de $35,000, mediante pagos periódicos. La construcción se haría conforme las especificaciones del plano de construcción diseñado por el delineante Héctor Iván Ortiz Otero, bajo la firma y sello del Ingeniero Eli Candelaria López. Entre lo pactado se encontraba, además, la construcción de una verja a lo largo de la colindancia por el este de la propiedad.
Ceñido a la controversia que nos atañe, en el Contrato se consignó lo siguiente:

“TERCERO: “EL CONTRATISTA” suplirá la mano de obra para esta construcción. “EL PROPIETARIO” será responsable de suplir todos los materiales, equipo sanitario, puertas, ventanas y terminaciones que requiera esta obra. ”

A su vez, el Contrato delineó que cualquier cambio en los términos y condiciones del mismo debía hacerse por escrito y con la comparecencia de las partes. Del expediente se desprende que esta condición se dejó sin efecto, una vez comenzada la construcción pactada, por anuencia verbal de las partes.
Comenzada la obra de construcción por Deynes Villanueva, el apelante, Pizarro Rivera, comenzó a exigirle a la parte apelada cambios a lo estipulado en el Contrato. A modo de efectuar los cambios exigidos, se tenía que llevar a cabo lo siguiente:

“I) Construcción de pedestal eléctrico;

*1074
2) Cambios de inversion del plano, invirtiendo la casa de posición dentro del plano, lo que se iba a construir a la derecha, quedo.ría a la izquierda;

3) Cambios en la marquesina;

4) Cambios en el tamaño de las ventanas, lo que reorganizaba la cocina, distinto al plano original;

5) Construcción de techo de concreto armado;

6) Ampliación de 26 x 21, la cual consistía de tres paredes, (la cuarta pared era parte de una de las ya existentes en la casa) y una pared en forma de “L” se hizo en concreto armado. Dicha ampliación incluyó el establecimiento, construcción o colocación de lo siguiente;

i. Nueve receptáculos eléctricos de 110 voltios y dos receptáculos de 220 voltios;

ii. Dos ventanas;

iii. Piso;

iv. Zapata, y

v. Apertura de dos huecos para la futura colocación de puertas; ”
El resultado final consistiría en un área de 546 pies cuadrados adicionales. Según insistencia del propietario apelante, el destino de dicha ampliación era solamente para uso de marquesina o garaje de vehículos de motor. Por su parte, el apelado acota que, según expresado por el apelante, el propósito de la ampliación era para montar allí un taller desde el cual iba a manejar su negocio de instalación de puertas y ventanas.
Al cambiarse de su posición original la casa, según dictaba el plano, la marquesina sufriría cambios consistentes en abrir huecos en las paredes de recién construcción con el propósito de colocar ventanas. Además, dicho cambio provocaría empañetado adicional, aumento en exceso de la cantidad de receptáculos eléctricos a los originalmente pautados en el plano y variación en cuanto a la colocación de éstos en las diferentes paredes añadidas. Otros cambios y obras adicionales consistieron en la instalación de 10 luces de exterior no comprendidas en el plano, varetas alrededor de la casa, colocación de un tubo para el funcionamiento de la máquina de hacer hielo (“ice maker”), construcción de medio baño en la extensión de 26 x 21, la cual incluía inodoro, lavamanos, receptáculos eléctricos adicionales, e instalación de tubos de agua y de desagüe, cambio de inodoro en el baño master y un aumento de 2’ x 5” en el tamaño de dicho cuarto.
Finalmente, otros cambios efectuados no comprendidos en el plano, fueron la construcción de aceras en los laterales de la casa con una proporción de cinco pies de ancho, variaciones en el closet de la marquesina, la escalera y la localización de un pozo muro y, por último, la colocación de vigas para poner puertas corredizas.
Avanzada la construcción de la obra, el contratista apelado' se comunicó con la parte apelante para informarle sobre los cambios pronosticados y le manifestó que por los $37,000 estipulados no podría terminarle el trabajo. Ante ello, lo conminó a pagarle la cantidad de $25,000 adicionales para poder terminarle la obra de acuerdo a sus exigencias. El apelante le expresó no tener la cantidad adicional requerida y le cuestionó la procedencia del costo estimado, entendiendo que no procedía el mismo.
No obstante lo anterior, a modo de satisfacer la remuneración de la mano de obra requerida, el apelante le ofreció al apelado Deynes Villanueva hacerle las puertas y ventanas de otra casa que este último tenía bajo construcción en un solar contiguo a la propiedad en controversia. A cambio de ello, el apelado le terminaría la *1075 obra, sin exigirle pago adicional al pactado en el Contrato. Surge del expediente que, aceptada la oferta, quedó estipulado entre las partes que el contratista apelado terminaría la casa y no le cobraría el garaje/taller añadido, el cual quedaría pagado con la instalación que en el otro solar se comprometía hacer el apelante. Por tanto, los cambios pronosticados y anunciados comenzaron a efectuarse de inmediato por parte del apelado. Sin embargo, el apelante no cumplió con dicho convenio transaccional.
Como resultado de lo anterior y tras múltiples requerimientos por parte del apelado para que el apelante cumpliese con su parte de lo concertado, el 25 de junio de 1996, el señor Deynes Villanueva presentó la acción de epígrafe ante el TPI, demandando incumplimiento de contrato con relación al pago de cambios en la orden, daños y perjuicios y cobro de dinero por la cantidad adeudada de $25,000 adicionales a los pactados por el Contrato, más honorarios de abogado, gastos y costas.
El 1ro de noviembre de 1996, la parte apelante contestó la demanda, negó las alegaciones imputadas en su contra, presentó su defensas afirmativas y reconvino contra la parte apelada. Mediante dicha reconvención, el apelante aceptó no haber cumplido con su parte del acuerdo, según verbalizado, es decir, que no construyó las puertas y ventanas comprometidas en la obra alterna del contratista en el terreno aledaño a la construcción que nos ocupa. Según el apelante, el contratista apelado no le cobró la referida ampliación porque supuestamente habían acordado sustituir el costo de la misma por la pintura de la casa y el enchape o la terminaciones de los baños.
Por su parte, el apelado insistió en que el acuerdo consistía en realizar la ampliación a cambio de que el apelante se encargara de instalar las puertas y ventanas en la otra casa. Este pacto verbal no fue cumplido por el apelante, por lo que instó ante el TPI la causa de acción que hoy nos ocupa.
Durante la celebración de la vista en su fondo, el apelado fundamentó su teoría en el testimonio del propio apelante, Pizarra Rivera, a quien interrogó como testigo hostil, testimonio no controvertido y a quien Deynes Villanueva sentó más tarde como su testigo. Además de dicho testimonio, el apelado ofreció el suyo propio y el de su hermano, el también contratista Edwin Mercado, y presentó prueba documental consistente, en lo pertinente, en fotografías de la ampliación efectuada en la residencia del apelante y el plano de dicha construcción.
Por otro lado, los apelantes basaron su contención en el testimonio de tres testigos, a los cuales Pizarra Rivera alegadamente tuvo que subcontratar para terminar el trabajo que el contratista apelado se rehusó completar hasta tanto aquél no cumpliese con su parte del pacto verbal. A su vez, el apelante ofreció su propio testimonio de los hechos y sentó a testificar al Ing. Eli Candelaria como perito de ocurrencia.
El Ing. Candelaria, allá para el 20 de junio de 1996 y a solicitud del apelante, preparó un reporte de inspección en donde establecía varias deficiencias y puntos por terminar. Según se desprende de su testimonio, el perito desconocía a quién le correspondía terminar el proyecto, si al apelante o al apelado. Por lo que, de acuerdo a su experiencia, limitó las obras que el contratista tenía como deber completar a sólo algunas, entre las que se encuentran limpieza y recogido de escombros, conectar las conexiones eléctricas, construcción del pozo séptico en el hoyo recién hecho para ese propósito, construcción de verja en el lateral izquierdo y demás reparaciones mínimas. Atestó el Ing. Candelario que las demás terminaciones demandadas por el apelante, le correspondían al apelante por no haber sido contratadas.
Mediante dicho informe pericial, se reconoció que se hizo una ampliación hacia el patio posterior de aproximadamente 26 x 21 pies, que no estaba en los planos y que se construyó por acuerdo entre las partes. Manifestó el perito que, para aquel momento, la obra análoga a la construcción de la casa estaba en aproximadamente de $20 a $25 el pie cuadrado. Aún así, mediante el referido informe se reconoció también que la extensión de 26 x 21, por ser de concreto armado y tener otras variaciones, distaba de ser análogo al resto de *1076 la construcción en la casa.
Así las cosas, el 12 de noviembre de 2003, el TPI emitió la sentencia apelada, declarando con lugar la acción instada y no ha lugar la reconvención presentada por los apelantes. En su consecuencia, el tribunal apelado condenó de forma solidaria a estos últimos al pago de $27,000 por concepto del balance adeudado al contratista apelado al momento de presentada la presente acción y al pago de $3,000 por concepto de honorarios de abogado, más el pago de costas y gastos.
Insatisfechos con dicha determinación, los apelantes recurren ante nos imputando la comisión de dos errores, los cuales, en síntesis, cuestionan la imposición del pago de $27,000 por concepto de obras adicionales no previstas en el contrato inicial por supuesta ausencia de prueba pericial que así lo demostrara. Además, impugnaron la procedencia de la imposición del pago de $3,000 por concepto de honorarios de abogado, en ausencia de una determinación de temeridad por parte del TPI que ameritara la misma.
Con el beneficio de una exposición narrativa de la prueba, los alegatos de las partes y de la totalidad del expediente ante nuestra consideración, estamos en condición de resolver el recurso de epígrafe.
II
Siendo la controversia que hoy nos atañe una de las que gira en torno a la doctrina de apreciación de la prueba y la consecuente adjudicación de credibilidad que en su día realizara el TPI, conviene a modo de umbral enmarcar la discusión que pretendemos dentro de la misma. Veamos.
A. La apreciación de la prueba y la adjudicación de credibilidad testifical.
Es norma claramente establecida por el Tribunal Supremo de Puerto Rico que en ausencia de error manifiesto, pasión, prejuicio o parcialidad, no se intervendrá a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad hecha en instancia por el juzgador de los hechos. Trinidad García v. Chade, opinión de 18 de enero de 2001, 2001 J.T.S. 10 a la pág. 793; Colóny otros v. K-Marty otros, opinión de 26 de junio de 2001, 2001 J.T.S. 98, a la pág. 1484; Municipio de Ponce v. Autoridad de Carreteras, opinión de 29 de diciembre de 2000, 2001 J.T.S. 3, a la pág. 658; Monitor Arzola v. Soc. Legal de Gananciales, 138 D.P.R. 600 (1995)
Más aún, dispone la Regla 43.2 de las de Procedimiento Civil de Puerto Rico, 32 L.P.R.A., Ap. III, en lo pertinente, que “[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el Tribunal Sentenciador para juzgar la credibilidad de los testigos”.
Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. Argüello v. Argüello, supra. La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. Íd.; Pueblo v. Bonilla Romero, 120 D.P.R. 92(1987).
Más aún, el juez ante quien deponen los testigos es quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, en fin, el comportamiento general mientras declaran, factores que van formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. Argüello v. Argüello, supra. “[L]a declaración de un testigo no contradicho sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil o que por su conducta en la silla testifical se haga indigno de crédito". Miranda Soto v. Mena Eró, 109 D.P.R. 473 (1980)
*1077 (Citas omitidas).
Aunque, de ordinario, el foro apelativo no interviene con la apreciación de la prueba que hacen los foros judiciales de instancia, sí lo hace cuando un balance racional, justiciero y jurídico de la totalidad de la prueba y de los documentos que obran en autos lleva a conclusiones distintas a las del tribunal de instancia. Negrón Rivera y Bonilla, Ex Parte, 120 D.P.R. 61 (1987).
Un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez v. Hosp. La Concepción, 115 D.P.R. 721, 728 (1984). No obstante, está claro que el arbitrio del juzgador de hechos es respetable, mas no absoluto. Por eso, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. Véase, Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987).
No obstante, en el ejercicio de su facultad revisora, el foro apelativo se encuentra en igual posición que el foro de primera instancia en cuanto a evaluar la prueba pericial y documental ofrecida. Es por ello que, en lo que respecta a dicha evidencia, está facultado a adoptar su propio criterio en la evaluación de la misma. En cuanto a la prueba pericial, el Tribunal Supremo ha expresado que como foro apelativo, no estamos obligados a seguir indefectiblemente “la opinión, juicio, conclusión o determinación de un perito o facultativo...y que todo tribunal está en plena libertad de adoptar su criterio propio en la apreciación y evaluación de la prueba”. Culebra Enterprises Corp. v. E.L.A., 143 D.P.R. 935 (1997), citando a Prieto v. Maryland Casualty Co., 98 D.P.R. 594 (1970) (otras citas omitidas); Véase, además, Dye-Tex Puerto Rico, Inc. v. Royal Insurance Company of Puerto Rico, 150 D.P.R. 658, 662-663 (2000).
Habiendo discutido lo relativo a la apreciación de la prueba y la adjudicación de credibilidad alrededor de la cual se circunscriben los planteamientos que hoy nos ocupan, pasemos a entrar a los pormenores de los errores planteados a la luz de la discusión que antecede.
En cuanto al primer error imputado, a saber, la impugnación hecha por los apelantes con relación a la procedencia de la imposición del pago por la cantidad de $27,000 por concepto de incumplimiento de contrato en cuanto a la falta de pago de cambios en la orden, no les asiste la razón.
B. Aspectos generales sobre los contratos
Los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. Art. 1206, Código Civil, 31 L.P.R.A. see. 3371. Amador v. Conc. Igl. Univ. de Jesucristo, 150 D.P.R. 571 (2000). Existe un contrato cuando concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato, y (c) causa de la obligación que se establezca. Art. 1213 del Código Civil, 31 L.P.R.A. see. 3391; Díaz Ayala et al. v. E.L.A., Opinión de 30 de marzo de 2001, 153 D.P.R. _, 2001 J.T.S. 49. Una vez concurren las condiciones esenciales para su validez, los contratos son obligatorios. Art. 1230 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3451. El consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que ha de constituir el contrato. Art. 1214 del Código Civil, 31 L.P.R.A. see. 3401; Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517, 521 (1982).
Los contratos son fuente de obligación que se perfeccionan desde que las partes contratantes consienten voluntariamente a cumplir con los mismos. Las partes contratantes no solamente se obligan a lo pactado, sino también a toda consecuencia que sea conforme a la buena fe, al uso y a la ley. Art. 1210, Código Civil, 31 L.P.R.A. see. 3375. Véase además, Irizarry v. García Cámara, opinión de 27 de noviembre de 2001, 155 D.P.R. _, 2001 J.T.S. 164.
*1078 En Puerto Rico rige el principio de la libertad de contratación. A tenor con este principio, el Código Civil establece en su Artículo 1207, 31 L.P.R.A. see. 3372, que las partes contratantes pueden convenir los pactos, cláusulas y condiciones que tengan por conveniente, siempre que los mismos no sean contrarios a las leyes, a la moral ni al orden público. Si los términos de un contrato son claros y no dejan dudas sobre la intención de los contratantes, se estará al sentido literal de las cláusulas pactadas. Artículo 1233 del Código Civil, 31 L.P.R.A. see. 3471.
Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes, por lo que se debe cumplir con lo expresamente pactado. Art. 1044 del Código Civil, 31 L.P.R.A. see. 2994. Por tanto, los tribunales de justicia no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato, cuando dicho contrato es legal y válido y no contiene vicio alguno. íd. Véase, además, De Jesús González v. A.C., 148 D.P.R. 255 (1999); Mercado Quilichini v. U.C.P.R., 143 D.P.R. 610, 627 (1997); Cervecería Corona v. Commonwealth Ins. Co., 115 D.P.R. 345, 351 (1984).
C. Los contratos de obra por precio alzado y las alteraciones o adiciones que se le hacen al mismo
En el contrato de ejecución de obra, una de las partes, llamada empresario o contratista, se obliga frente a la otra, llamada principal o comitente, a la producción de un determinado resultado con su actividad autónoma o independiente, a cambio de un precio cierto. José Puig Brutau, Compendio de Derecho Civil, Barcelona, Bosch, Casa Editorial, S.A, 3ra edición, 1997, Tomo II, a la pág. 489.
El Artículo 1485 del Código Civil, 31 L.P.R.A. see. 4126, establece respecto al aumento en el precio de construcción de obra que:
“El arquitecto o contratista que se encarga por un ajuste alzado de la construcción de un edificio u otra obra en vista de un plano convenido con el propietario del sueldo, no puede pedir aumento de precio aunque se haya aumentado el de los jornales o materiales, pero podrá hacerlo cuando se haya hecho algún cambio en el plano que produzca aumento de obra, siempre que hubiese dado su autorización el propietario. ” (Negritas suplidas.)
Es norma claramente establecida que cuando se haya hecho algún cambio en el plano que produzca aumento de obra, siempre que hubiese dado su autorización el propietario, el aumento de precio que ello implique, no procede de la naturaleza del contrato, sino de la verdadera novación que las partes han introducido en él, de su propia voluntad concordada, la cual es en sí una fórmula de consentimiento. Véase Díaz & Morey, Inc. v. Báez, 87 D.P.R. 479, 488 (nota 4) (1963).
El derecho de un contratista a pedir aumento de precio por servicios adicionales prestados es de aplicación cuando se trata de un precio reconciliado en un contrato de obra con precio fijo. El aumento en precio es el que resulta de una orden de cambio o de una exigencia adicional que produce, a su vez, un aumento en los jornales o materiales. Zequeira v. Corporación de Renovación Urbana y Vivienda, 83 D.P.R. 878, 884 (1961).
Acoplemos los fundamentos legales que preceden a la controversia ante nos.
III
Durante la vista en su fondo, del testimonio del propio apelante quedó indubitadamente demostrado que, de manera oportuna, el contratista le hizo un acercamiento para informarle sobre las consecuencias que acarrearían los cambios exigidos por aquél, a saber, la construcción adicional incongruente con el plano original. El apelante reconoció que al no poder satisfacer pecuniariamente los cambios efectuados, lo cual ocasionó que el contratista detuviese la obra temporalmente, se llegó a un acuerdo a modo de intercambio.
*1079 Según descrito y reconocido por el apelante, el acuerdo verbal pactado entre las partes consistía en que el contratista terminaría la obra a cambio de que el propietario apelante le colocara puertas, ventanas y armarios (“closets”) en otra obra en la cual trabajaba el apelado, justo al lado de la propiedad en controversia. El apelante atestó que de dicha manera, “quedaría pagada la ampliación de 26 x 27.” Más aún, del expediente se desprende que el propio apelante aceptó no haber cumplido con su parte del acuerdo y entendió como causa justificada que el contratista no terminase de construir la otra obra, por lo que “no hizo ese trabajo...” Las manifestaciones inequívocas del apelante demostraron que nunca efectuó la contraprestación debida y no pudo demostrar ni explicar, a preguntas del TPI, cómo había pagado entonces cambios tan sustanciales como los reseñados.
Aun cuando, acomodaticiamente, el apelante intentó sostener su argumento que “por mutuo acuerdo”, y contrario al acuerdo verbal efectuado entre las partes, sustituyó el pago de la ampliación y cambio de orden con su aportación de pintura y enchapes de los baños, no nos adscribimos a dicha teoría.
Tanto la prueba documental auscultada como la testimonial vertida por las partes de epígrafe y hasta el informe pericial merecieron entero crédito del TPI por su efecto de arrojar indicios que dicha prestación era, contractualmente, responsabilidad inherente del dueño de la propiedad, es decir, del apelante aportar originalmente como parte de las contraprestaciones acordadas. Dicho en otras palabras, suscribir la pretensión de la parte apelante a los efectos de ofrecer a modo de pago los mismos materiales que le correspondía aportar como nueva contraprestación, no puede ser considerado como una novación modificativa al pacto original existente entre las partes.
La verdadera novación al acuerdo inicial es precisamente la planteada por los apelados, aceptada y sustentada por el apelante, acogida por el TPI y avalada por esta Curia, a saber, el acuerdo verbal consistente en finalizar obra de construcción original en la propiedad del apelante por parte del contratista a cambio de montar las puertas, ventanas y closets por parte del apelante en la propiedad del apelado. Díaz & Morey, Inc. v. Báez, supra.
Concurrimos con el TPI en cuanto a su expresada convicción que se llevaron a cabo todos los cambios reclamados por los apelantes como parte del cambio de orden del pacto original, los cuales, por admisión del apelante, quedaron detallados. Sin duda, este cambio de orden creó, a su vez, un nuevo pacto con nuevas prestaciones y contraprestaciones a satisfacerse. Por ello, el verdadero incumplimiento estribó en el rechazo del apelante de satisfacer, según acordado, su contraprestación con motivo del cambio de orden. Su renuencia a montar las puertas, ventanas y armarios en la propiedad del contratista a cambio de los cambios que éste ya había llevado a cabo en la propiedad de aquél, cumpliendo, pues, con su parte del acuerdo verbal sin que el apelante hiciere lo propio, es base suficiente para dar paso aparte del dictamen apelado.
En vista de los hechos esbozados y las conclusiones de derecho que preceden, entendemos que el TPI no abusó de su discreción al decretar que el apelado terminó sustancialmente su obra y la abandonó por el incumplimiento de pago de los cambios que ya había efectuado, debido, exclusivamente, a la falta cometida por el apelante de no cumplir con su parte del acuerdo ni mucho menos haber pagado los cambios a la parte apelada.
Colegimos, pues, que hubo un cambio en el plano que produjo un aumento bona fide en obra. El propietario, previo a efectuar los cambios, pidió aumento de precio, no sin antes el apelante ofreciera su autorización a ello. 31 L.P.R.A see. 4126; Díaz & Morey, Inc. v. Báez, supra. Resaltamos el hecho de que fue el propio apelante quien en corte abierta, según quedó consignado en la exposición narrativa de la prueba, admitió la cantidad de cambios realizados por el contratista en su propiedad en exceso de aquellos pautados originalmente en el Contrato conforme el plano de construcción. Más aún, el apelante admitió la existencia de un acuerdo verbal para novar la intención inicial de las partes. Es decir, éste identificó la naturaleza de dicho *1080 pacto, a saber, el referido intercambio de sus servicios de montar puertas y ventanas en otra obra, ello en sustitución del pago parcial por las mejoras efectuadas por el contratista en la construcción objeto de litigio. Recordemos, además, que el apelante admitió que no había hecho el trabajo convenido, por lo que es improcedente su alegación de intercambio de pago de cambio de orden por materiales (i.e. pintura y enchape de los baños). Finalmente, el mismo perito que los apelantes presentaron como parte de su prueba, admitió todas las alegaciones y testificó, de acuerdo a su conocimiento pericial, el valor en el mercado de los mencionados cambios. En esencia, los mismos se ajustaron a lo alegado por la parte apelada en la acción de epígrafe.
Como vemos, la parte apelante no demostró que el TPI actuara con pasión, prejuicio, parcialidad o error manifiesto al apreciar la prueba. Siendo ello así, confirmamos la sentencia apelada, de la cual obliga a los apelantes a pagar de forma solidaria a los apelados la cantidad de $27,000 por concepto cambios en orden efectuados, facturados y no pagados. No se cometió el primer error imputado.
IV
De otra parte, los apelantes señalan como error la imposición de honorarios de abogado, arguyendo que no procede la misma, dado que no hubo una determinación expresa de temeridad por parte del TPI y que no fueron temerarios en la litigación del caso. Les asiste la razón.
En la sentencia que nos ocupa, se impuso el pago de costas como también el pago de honorarios. A esos efectos, la Regla 44.1 de Procedimiento Civil, 32 L.P.R.A. Ap. II, R. 44.1, dispone lo siguiente:

“(a) Su concesión. Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación, excepto en aquellos casos en que se dispusiera lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que un litigante debe reembolsar a otro.

(d) Honorarios de abogado. En caso de que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable, el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. ”

Resulta claro entonces que los honorarios de abogados se conceden en casos de temeridad a la discreción del tribunal sentenciador. Soto v. Caribe Shipping Co., Inc., 141 D.P.R. 726 (1996). Sin embargo, una vez se determina la existencia de temeridad, la condena de honorarios de abogados es imperativa. Fernández Mariño, et. al. v. San Juan Cement Co., 118 D.P.R. 713, 718 (1987).
La referida regla no provee una definición de qué constituye temeridad. Sin embargo, se ha dispuesto que la temeridad “es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia”. Oliveras, Inc. v. Universal Ins. Co., 141 D.P.R. 900 (1996). Así, un Tribunal de Instancia otorgará honorarios de abogados por temeridad cuando una parte actuó o manejó un pleito con terquedad, obstinación, contumacia e insistencia, con una actitud desprovista de fundamentos que obliga a otra parte a incurrir en gastos o procesos innecesarios. Domínguez Vargas v. Great American Life Ins. Co., 2002 J.T.S. 110.
Como la determinación de si en efecto hubo temeridad se encuentra dentro de la sana discreción del Tribunal sentenciador, este Tribunal no revisará dicha determinación a menos que el Tribunal de Instancia haya cometido abuso de discreción. San Miguel Fértil Corp. v. P.R. Drydock, 94 D.P.R. 424 (1967).
*1081 La imposición de honorarios de abogado sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exorbitante para su peculio.” H. Sánchez, “Rebelde sin Costas”, 4 (2) Boletín Judicial 14 (1982); Blas v. Hosp. Guadalupe, 146 D.P.R. 267 (1998).
La conciencia de la “propia sinrazón” que caracteriza a la parte temeraria no debe afectar a quien en buena lid ejerce o defiende sus derechos. Un postulado fundamental de nuestro sistema de administrar justicia es que “no puede penalizarse a un litigante qüe utiliza las vías judiciales para vindicar un derecho por el simple hecho de no haber prevalecido en su acción. Así, la norma imperante en nuestro ordenamiento procesal civil establece que la parte victoriosa siempre tiene derecho a recobrar las costas, pero los honorarios de abogado sólo proceden cuando el tribunal determina que la parte perdidosa actuó con temeridad.” Véase, González y otros v. Commonwealth Insurance Co., 140 D.P.R. 673 (1996).
V
Examinado el caso para determinar si la imposición de honorarios de abogado estuvo justificada, resolvemos en la negativa. No encontramos indicación de que los apelantes hayan impedido la pronta solución de este caso, ya fuese procediendo con un litigio que se pudo evitar, dilatándolo innecesariamente u obligando a las otras partes a incurrir en gestiones evitables. Blas v. Hosp. Guadalupe, supra. Luego de contestar la acción instada en su contra, la parte apelante contestó oportunamente la misma, presentó sus defensas afirmativas y reconvino contra la parte apelada, reconvención que fue declarada no ha lugar mediante la sentencia apelada. No podemos perder de perspectiva que el caso de marras nos presenta una situación de hechos para la determinación de si hubo incumplimiento por parte del propietario Pizarro Rivera de la novación introducida verbalmente por las partes en el contrato original.
En los testimonios vertidos en corte abierta hubo una gama de contradicciones que hacía imperativo que el TPI dependiera sustancialmente de elementos subjetivos para la adecuada resolución del pleito. Por tanto, la determinación de incumplimiento estaba supeditada a la credibilidad que le mereciera la prueba testifical al juzgador de los hechos.
A tenor con tal cuadro fáctico, la parte demandada-apelante tenía el derecho de presentar prueba y defenderse de las imputaciones de incumplimiento habidas en su contra. No se trata aquí de un litigio que pudo haberse evitado. A diferencia de la contención expresada por la parte apelada, nuestra determinación no se trata de establecer si el TPI determinó expresa o implícitamente que una de las partes actuó temerariamente. Nuestra función revisora descansa en determinar si el TPI abusó o no de su discreción al imponer los honorarios de abogado. San Miguel Fertil Corp. v. P.R. Drydock, supra.
Ante la ausencia de pruebá en contrario, no encontramos justificación para la imposición de honorarios de abogado a la parte apelante. Se modificará la sentencia apelada a los fines de eliminar totalmente la imposición de honorarios de abogado por la cantidad de $3,000 que hiciera el TPI.
Habida cuenta de lo anterior, resolvemos que los apelantes incurrieron en incumplimiento de contrato al no cumplir con su parte de las contraprestaciones surgidas a raíz del cambio de orden acordado verbalmente por las partes. Examinados los principios generales de los contratos, la definición del contrato especial de obra por precio alzado y las alteraciones o adiciones que se le hacen al mismo a la luz de los hechos particulares de este caso, concluimos que la normativa expuesta es de aplicación. Por último, entendemos que los apelantes no fueron temerarios al litigar su caso.
VI
Por todo lo anterior, se modifica la sentencia apelada a los fines de eliminar la partida de honorarios de abogados impuesta a la parte apelante. Así modificada, se confirma la sentencia apelada.
*1082 Lo acordó el Tribunal y lo certifica la Secretaria General.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2005 DTA 47
1. Véase, Proyecto de Exposición Narrativa de la Prueba Oral de 8 de julio de 2004, pág. 15 et seq.
2. íd.
3 .íd.

4. íd.