Angie Rodríguez Reyes et als., demandantes, *v.* Caribbean Hospital Corporation, h/n/c Hospital Alejandro Otero López, demandante y tercero recurrente, y Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Médico-Hospitalaria, demandado y tercero recurrido.

*Número:* RE-94-201 *Resuelto:* 26 de junio de 1996

*Gerardo De Jesús Annoni,* de *Sánchez-Betances & Sifre,* abogado del recurrente; *José A. Miranda Daleccio,* abogado del recurrido.

I

El Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Profesional Médico-Hospitalaria (en adelante SIMED) expidió una póliza de seguros de responsabilidad profesional hospitalaria, tipo *claims made,* a favor de la Caribbean Hospital Corporation, que hacía negocios como Hospital Alejandro Otero Ló-

pez (en adelante Hospital). Esta póliza tuvo una fecha de vigencia del 15 de octubre de 1990 al 15 de octubre de 1991. Además, el Hospital compró una cubierta para el período retroactivo hasta el 15 de octubre de 1987, así como compró una cubierta para tres (3) períodos consecutivos de treinta (30) días para las fechas siguientes: 15 de octubre al 14 de noviembre de 1991; 14 de noviembre al 14 de diciembre de 1991, y 14 de diciembre de 1991 al 14 de enero de 1992.

Así las cosas, el 26 de enero de 1991 la Oficina de Manejo de Riesgos del Hospital recibió de la paciente Angie Rodríguez Reyes una solicitud juramentada para que se divulgara una copia de todo su expediente médico en el Hospital al licenciado Pinto Andino. El 15 de marzo de 1991, la Oficina de Manejo de Riesgos del Hospital envió dicha solicitud juramentada a sus corredores, Vidal & Rodríguez, Inc., quien a su vez, el 18 de marzo de 1991, refirió la solicitud juramentada al Departamento de Reclamaciones de SIMED, para requerir la atención a ese asunto. Dichos documentos fueron recibidos por SIMED el 19 de marzo de 1991.

El 7 de julio de 1992, la paciente Angie Rodríguez Reyes demandó al Hospital por una esterilización fallida. El Hospital remitió a SIMED una copia de la demanda, luego de lo cual SIMED le indicó que no ofrecería cubierta ni representación legal, ya que a su juicio la notificación de los documentos recibidos en su Departamento de Reclamaciones a través de los corredores no se consideraba una reclamación notificada al amparo de las disposiciones de la póliza.

Como consecuencia de ello, el Hospital presentó una demanda contra tercero a SIMED en la que alegó que sí había notificado a la aseguradora. Luego de ello, SIMED presentó una Moción de Sentencia Sumaria a la cual se opuso

el Hospital, por lo que el tribunal de instancia celebró una vista evidenciaria.

Así las cosas, el 10 de marzo de 1994 el tribunal de instancia dictó una sentencia sumaria parcial para desestimar la demanda contra tercero a SIMED por entender que no hubo notificación de la reclamación, según los términos claros de la póliza.

No conforme acude ante nos el Hospital, tercero demandante recurrente, y formula el señalamiento de error siguiente:

ERRÓ EL TRIBUNAL DE INSTANCIA AL NO CONSIDERAR NI RESOLVER QUE, BAJO EL DEBER LEGAL DE ACTUAR DE BUENA FE CON SU ASEGURADO (EL HOSPITAL), SIMED VENÍA OBLIGADA A NOTIFICARLE OPORTUNAMENTE A DICHA INSTITUCIÓN, DENTRO DE LA VIGENCIA DE LA PÓLIZA, QUE CONSIDERABA LOS DOCUMENTOS RECIBIDOS POR SU DEPARTAMENTO DE RECLAMACIONES EL 19 DE MARZO DE 1991 COMO INSUFICIENTES PARA CONSTITUIR UNA RECLAMACIÓN. Petición de revisión, pág. 6.

Expedimos el recurso y, con el beneficio de la comparecencia de las partes, resolvemos.

## II

En el caso de autos nos encontramos ante una póliza tipo *claims made*. Sobre ésta, en *Torres v. E.L.A.*, 130 D.P.R. 640, 645–647 (1992), señalamos que:

Una póliza de responsabilidad profesional puede ser, de acuerdo con sus términos, de "ocurrencia" (*ocurrence policy*) o de "descubrimiento" (*discovery policy*), comúnmente conocida en inglés como *claims made policy*. 11 *Couch on Insurance 2d (Ed. rev.)* Sec. 44:256 (1982). La diferencia entre ambas pólizas estriba en que la primera protege al asegurado de responsabilidad por cualquier *acto u omisión negligente incurrido durante el período de vigencia de la póliza*, independientemente del momento en que se hace la reclamación; mientras que la última protege al asegurado sólo en contra de las *reclamaciones hechas*

y traídas a la atención de la aseguradora durante dicho período de vigencia.

. . . . . . . .

El riesgo asegurado por la póliza de ocurrencia *es el siniestro en sí*, esto es, "la manifestación concreta del riesgo asegurado" que produce el daño garantizado por la póliza. Una vez el siniestro tiene lugar, entra en vigor la cubierta provista por tal póliza, aun cuando la reclamación sea hecha después de su período de vigencia. Por el contrario, la *notificación de la reclamación a la aseguradora* constituye el evento y riesgo asegurados por la póliza de *claims made*, independientemente de la fecha del siniestro.

Así pues, la cubierta bajo una póliza tipo *claims made* depende de que se presente la notificación a la aseguradora dentro del término de vigencia de la póliza o dentro de cualquier otro término que puedan haber convenido las partes después de su expiración. (Énfasis en el original suprimido y énfasis suplido, y citas y escolio omitidos.)

Por ende, el requisito de notificación de la reclamación dentro del término de vigencia de la póliza es medular para determinar si la aseguradora tiene la obligación de proveer la cubierta.

En el caso de autos, las Cláusulas III y VIII(1) de la póliza en cuestión resultan ser aplicables a la controversia ante nos. Éstas proveen, en lo pertinente, lo siguiente:

III. WHEN CLAIM IS TO BE CONSIDERED AS FIRST MADE.
A claim for injury shall be considered as being first made at the earlier of the following times:
   (1) when the Insured first gives written notice to the Syndicate a the claim has been made;
   (2) when the claimant first gives written notice to the Syndicate of a claim, or
   (3) when the Insured first gives written notice to the Syndicate of:
      (a) a specific act, error or omission which may subsequently give rise to an actual claim or suit, arising out of the rendering of or failure to render professional services;
      (b) the injury or damage which has resulted or may result from such act, error or omission; and

(c) the circumstances by which the Insured first became aware of such act, error or omission.

. . . . . . .

VIII AMENDED CONDITIONS
(1) ... The Insured shall give written notice to the Syndicate as soon as practicable of any claim made against the Insured or of any specific circumstances involving a particular person likely to result in a claim. The notice shall identify the Insured and contain reasonable obtainable information with respect to the time, place and circumstances of the injury, including the names and addresses of the injured and of available witnesses and the extent of the type of claim anticipated. If a claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Syndicate every demand, notice, summons or other process received by the Insured or the Insured's representatives. Apéndice, págs. 117–120.

Conforme a lo anterior, se entiende como hecha una reclamación bajo la póliza en cuestión: (1) cuando el asegurado notifica a su aseguradora que le ha sido hecha una reclamación; (2) cuando hay una reclamación por parte del reclamante a la aseguradora, y (3) cuando aún no ha habido una reclamación, pero ha ocurrido algún incidente que le advierte al asegurado que puede surgir una reclamación.

En el caso de autos, por un lado, argumenta el Hospital aquí recurrente que la buena fe imponía a SIMED la obligación de notificarle oportunamente al Hospital, dentro de la vigencia de la póliza, que consideraba los documentos recibidos por su Departamento de Reclamaciones como insuficientes para constituir una notificación de una reclamación. Por su parte SIMED, parte recurrida, argumenta que conforme a los términos y las condiciones de la póliza expedida, en particular las Cláusulas III y VIII(1), resulta claro que para que un asegurado quede cubierto por la póliza se requiere una notificación de reclamación durante la vigencia de la póliza, que contenga la información estipulada en dichas cláusulas. Veamos.

En el caso de autos, el Hospital le envió a sus corredores una copia de la solicitud juramentada por la paciente An-

gie Rodríguez Reyes para que se divulgara la copia de todo su expediente médico al licenciado Pinto Andino; además, el Hospital requirió a los corredores la acción que correspondiera. Resulta relevante que dicha carta fue cursada por el Director del *Programa de Manejo de Riesgos* del Hospital. A su vez, los corredores cursaron una copia de la solicitud jurada al Departamento de *Reclamaciones* de SI-MED, para que éstos prestaran atención a ese asunto lo antes posible. Si bien es cierto que en el formulario que los corredores enviaron a SIMED no se marcó el encasillado correspondiente al informe de accidente, se llenó un encasillado de "otros", en el que describieron el documento enviado como una solicitud de divulgación de información.

Resulta pertinente destacar que la remisión de los documentos se originó en la Oficina de Manejo de Riesgos del Hospital, llegando finalmente al Departamento de Reclamaciones de SIMED. Ello en unión al hecho de que la solicitud juramentada de la paciente era a los efectos de autorizar *a su abogado* a obtener una copia de su expediente o récord médico en el Hospital.

En *González v. The Commonwealth Ins. Co.*, 140 D.P.R. 673, 683–684 (1996),[1] señalamos que:

> "*Los contratantes están obligados a obrar recíprocamente con buena fe*, a pesar de que no haya una disposición específica que los oblige a ello. Art. 1210 del Código Civil, [31 L.P.R.A. sec. 3375]. Véase *Ocasio Juarbe v. Eastern Airlines, Inc.*, 125 D.P.R. 410 (1990). Todo contrato tiene "como pilar principal el principio de la buena fe contractual". *Arthur Young & Co. v. Vega III*, 136 D.P.R. 157, 170 (1994). *Los contratos de seguros no son la excepción.* Véanse: *Mun. of San Juan v. Great Ame. Ins. Co.*, [117 D.P.R. 632, 637 (1986)]; 14 *Couch on Insurance 2d (Ed. rev.)* Sec. 51:78, págs. 565–566 (1982).
> La buena fe crea deberes especiales de conducta "exigibles en cada caso, de acuerdo con la naturaleza de la relación jurídica y con la finalidad perseguida por las partes a través de ella[. Las

---

[1] Allí resolvimos que la aseguradora tiene la obligación exigible e independiente de notificar al asegurado que no le proveerá representación legal cuando éste la ha solicitado. Ello conforme a la doctrina de buena fe.

partes no se deben sólo a aquello que ellas mismas han estipulado o escuetamente a aquello que determina el texto legal, sino a todo aquello que en cada situación impone la buena fe.]". L. Díez-Picazo, prólogo en F. Wiecacker, *El principio general de la buena fe*, Madrid, Ed. Civitas, 1983 [sic], pág. 19, citado con aprobación en *Arthur Young & Co. v. Vega III*, supra. Véanse: *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339, 346 (1989); *Ramírez, Segal & Látimer v. Rojo Rigual*, 123 D.P.R. 161, 174–175 (1989); *López de Victoria v. Rodríguez*, 113 D.P.R. 265, 270–271 (1982); M.J. Godreau Robles, *Lealtad y buena fe contractual*, 58 Rev. Jur. U.P.R. 367 (1989). De acuerdo con dicho principio, el asegurador tiene un deber de actuar con buena fe hacia el asegurado (y, naturalmente, a la inversa), cuyo deber queda definido y delimitado por las circunstancias y los fines que persiguen los seguros .... (Énfasis suplido.)

Vemos, pues, que existe un deber por parte de la aseguradora de actuar de buena fe, según reconocido por este Tribunal en *González v. The Commonwealth Ins. Co.*, supra.

Resulta también pertinente lo señalado por Michel J. Godreau Robles,[2] citando a Entenza Escobar,[3] en cuanto a que

[e]l contrato, según los principios jurídicos que informan su regulación en Puerto Rico, no es sólo un medio para la realización de intereses individuales, sino que es además un instrumento que, por realizar funciones de trascendencia supraindividual, ha de responder a las exigencias de la equidad, de la justicia distributiva y social y del interés público, y a tal efecto queda sometido a la posibilidad de intervención del Estado, principalmente a través de sus órganos legislativo y judicial.

En el ámbito federal, resulta altamente persuasivo el caso *Federal Sav. and Loan Ins. Corp. v. Burdette*, 718 F. Supp. 649, 653–654 (E.D. Tenn. 1989), que, en lo pertinente, resolvió:

---

[2] M.J. Godreau, *Lealtad y Buena Fe Contractual*, 58 Rev. Jur. U.P.R. 367, 401 (1989).

[3] P.F. Entenza Escobar, *Los principios generales del derecho contractual puertorriqueño*, 3 Rev. Der. Pur. 7, 23 (1962).

... If notice provided to an insurer is considered by the insurer to be defective, *good faith requires the insurer to notify the insured of its objections* within a reasonable time, and if the insurer fails to do so or proceeds to act as though notice was satisfactory, it has waived any right to assert notice as a defense at a later date. *Crumley v. Travelers Indemnity Co.*, 475 S.W.2d 654, 658 (1972); *Pennsylvania Ins. Co. v. Horner*, 281 S.W.2d 44, 46 (1955); *Johnson v. Scottish Union Ins. Co.*, 22 S.W.2d 362, 363 (1929). ... *It is not in the interests of fairness or justice to permit an insurer to remain silent at the time purported notice is received, and then much later, after claims have been filed which may subject the insurer to some liability under the policy, permit the insurer to complain for the first time that notice was not sufficient.* (Escolio omitido y énfasis suplido.)

Asimismo, véase *St. Paul Fire v. Metropol. Urology*, 537 N.W.2d 297, 300 (1995), en el que se trataba de una paciente que requería una copia de su expediente médico para sus abogados y el Hospital le notificó tal hecho a la aseguradora mediante una llamada telefónica. Allí se resolvió que:

The phone call provided notice of the injured party's name and of the possibility of his bringing a malpractice action. It did not provide the injured party's address, the names and addresses of witnesses, or the date, time, and place of the incident. But strict compliance is not required for notice provisions in insurance policies; substantial compliance is adequate. ...

... In *SCSC Corp. v. Allied Mutual Ins. Co.*, 533 N.W.2d 603 (Minn.1995), the [S]upreme [C]ourt held that partial or defective notice

clearly gave [an insurer] sufficient information to conclude that [the insured] had presented a claim for arguable coverage under its policies with [the insurer.] At a minimum, this information required [the insurer] to investigate [the insured's] claims and to provide [the insured] with a coverage position. (Citas omitidas.)

Igual razonamiento utilizado en dichos casos aplicamos en nuestra jurisdicción, por lo que concluimos que aplica al caso de autos la doctrina de la buena fe, la cual le imponía a la aseguradora SIMED el deber de notificar a su asegurada, el Hospital, que la información sometida oportuna-

mente era insuficiente o defectuosa como notificación. De ahí que no proceda la defensa levantada por SIMED de falta de una notificación adecuada o suficiente al producirse subsiguientemente la reclamación. Por ende, erró el tribunal de instancia al dictar sentencia sumaria parcial para desestimar la demanda contra tercero presentada por el Hospital contra SIMED.

Por los fundamentos antes expuestos, *se revoca la sentencia recurrida.*

Así lo pronunció, manda el Tribunal y certifica el señor Secretario del Tribunal Supremo. El Juez Asociado Señor Negrón García disintió con una opinión escrita, a la cual se unió el Juez Asociado Señor Hernández Denton. El Juez Asociado Señor Rebollo López no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario del Tribunal Supremo*

— O —

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se unió el Juez Asociado Señor Hernández Denton.

La mayoría del Tribunal resuelve hoy que, cuando un hospital le notifica mediante una carta a su aseguradora *que un paciente le ha solicitado la divulgación de una copia de su expediente médico a un abogado*, la aseguradora está obligada a informarle, conforme a la doctrina de buena fe, que dicha notificación es insuficiente o defectuosa para constituir una reclamación. Al así decidir, la premisa inarticulada *equipara incorrectamente a la solicitud hecha al hospital con una "reclamación".*

# I

Los hechos no se discuten. Caribbean Hospital Corporation, h/n/c Hospital Alejandro Otero López, recibió de la paciente Angie Rodríguez Reyes una *solicitud jurada para que divulgara una copia de todo su expediente médico al Lcdo. Luis E. Pinto Andino.* A esos efectos, el hospital le informó del requerimiento a sus corredores de seguro, Vidal & Rodríguez, Inc. Éstos, a su vez, le remitieron un documento a SIMED,(¹) aseguradora del hospital,(²) para indicarle *únicamente* que había recibido *una solicitud de divulgación de información.*

Entablado el pleito ante el Tribunal Superior, Sala de Arecibo, contra el hospital, éste incluyó a SIMED como tercera demandada. Oportunamente, SIMED solicitó una sentencia sumaria, y el 10 de marzo de 1994 el tribunal (Hon. Olivette Sagebién, Juez) accedió y desestimó la causa de acción en su contra.(³) El hospital acudió ante nos.(⁴)

---

(¹) Sindicato de Aseguradoras para la Suscripción Conjunta de Seguros de Responsabilidad Profesional Médico Hospitalaria.

(²) SIMED le había expedido una póliza tipo *claims made* sobre la responsabilidad médico-hospitalaria, con fecha de efectividad de 15 de octubre de 1990 a 15 de octubre de 1991 y con fecha de retroactividad a 15 de octubre de 1987. Posteriormente fue extendida hasta el 13 de enero de 1992.

(³) Concluyó el tribunal a quo que el envío de una solicitud de divulgación de información en el caso de autos con una hoja de trámite que tiene marcado el encasillado "otros" y en blanco el encasillado "Informe de Accidente", no cumplió con los requisitos exigidos por la póliza *claims made* expedida por SIMED a favor de Caribbean Hospital Corporation.

(⁴) Alega:

"ERRO EL TRIBUNAL DE INSTANCIA AL NO CONSIDERAR NI RESOLVER QUE, BAJO EL DEBER LEGAL DE ACTUAR DE BUENA FE CON SU ASEGURADO (EL HOSPITAL), SIMED VENIA OBLIGADA A NOTIFICARLE OPORTUNAMENTE A DICHA INSTITUCION, DENTRO DE LA VIGENCIA DE LA POLIZA, QUE CONSIDERABA LOS DOCUMENTOS RECIBIDOS POR SU DEPARTAMENTO DE RECLAMACIONES EL 19 DE MARZO DE 1991 COMO INSUFICIENTES PARA CONSTITUIR UNA RECLAMACION." Petición de revisión, pág. 6.

## II

Confirmaríamos. Al revocar, la mayoría incurre en serias incompatibilidades jurisprudenciales y doctrinarias.

*Primero, igualan* una mera solicitud de información con una reclamación. Nuestro Código Civil no brinda ningún significado preciso a la palabra *reclamación.* Díez-Picazo nos dice que "[r]eclamación vale, en principio, tanto como *exigencia* o *intimación.* Es decir, se trata de un acto por el cual el titular de un derecho subjetivo o de una facultad se dirige al sujeto pasivo de dicho derecho o de dicha facultad para requerirle que adopte el comportamiento. La reclamación es pues una pretensión en sentido técnico". L. Díez-Picazo, *La prescripción en el Código Civil,* Barcelona, Ed. Bosch, 1964, pág. 130.

La paciente Rodríguez Reyes le reclamó al hospital su derecho a obtener su expediente médico, mas no así su derecho en cuanto al alegado daño causado por la conducta de mala práctica médica.

Es obvio que *solicitar a un hospital que se le entregue a un abogado copia de un expediente médico, no equivale a una reclamación por daños.* No necesariamente su propósito es actuar jurídicamente contra el hospital o sus empleados. Frecuentemente, estos expedientes se utilizan para múltiples usos, tales como probar que cierta persona estuvo hospitalizada, que padece de alguna enfermedad, para entregar a otro médico, entre otros.

Además, la mera solicitud del expediente médico no interrumpe el término prescriptivo de la causa de acción por mala práctica profesional que pueda tener el paciente contra el hospital o sus empleados.([5]) En consecuencia, tam-

---

([5]) La reclamación extrajudicial que interrumpe el término prescriptivo es aquella "*manifestación inequívoca* de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo". (Énfasis en el original.) *Díaz de Diana v. A.J.A.S. Ins. Co.*, 110 D.P.R. 471, 477 (1980). Véase *Feliciano v. A.A.A.*, 93 D.P.R. 655 (1966).

poco debe convertirse, por fíat judicial, en una reclamación en cuanto a una póliza de seguros tipo *claims made.*

*Segundo,* la propia naturaleza de una póliza tipo *claims made*([6]) *presupone* que antes de notificar una reclamación a la aseguradora se le haya reclamado extrajudicial o judicialmente al asegurado. Aquí no se le reclamó al hospital sino hasta después de haber vencido la póliza expedida por SIMED. *La ruta decisoria de la mayoría le imputa a SIMED tener conocimiento de una reclamación año y tres meses antes de su existencia.*([7])

*Tercero, cuando la notificación equivale a una reclamación,* la doctrina de la buena fe *sí* le impone a la aseguradora la obligación de informarle al asegurado de alguna deficiencia, tal como omitir la fecha del accidente o el nombre del perjudicado. Sin embargo, *cuando la notificación claramente no es una reclamación, la aseguradora no tiene obligación*([8]) *alguna de informárselo al asegurado.*

*Cuarto,* nuestros pronunciamientos en *González v. The Commonwealth Ins. Co.,* 140 D.P.R. 673 (1996), no aplican al caso de autos. Allí se le envió una carta a la aseguradora *que expresamente consignaba que el asegurado había sido demandado.* Más aún, "indicó" en su misiva que, según los hechos expuestos por el señor González Latorre, la alegación de demanda estaba cubierta por las disposiciones de

---

([6]) La cubierta bajo este tipo de póliza depende de que se presente la notificación a la aseguradora dentro del término de vigencia de la póliza. *Torres v. E.L.A.,* 130 D.P.R. 640 (1992).

([7]) Se envió la carta a SIMED el 18 de marzo de 1991 y se presentó la demanda el 7 de julio de 1992.

([8]) Más aún, no hay la obligación de informar al asegurado cuando, como en el caso de autos, la propia póliza de seguros indica expresamente qué debe incluir la notificación de una reclamación. Sentencia, pág. 5. *Si alguna parte no actuó de buena fe fue el propio hospital, pues intencionalmente incumplió las condiciones impuestas por el contrato de seguros que voluntariamente suscribió.*

las pólizas. A diferencia de la enviada a SIMED, esa carta equivalió a una reclamación.[9]
Disentimos.

---

[9] En *González v. The Commonwealth Ins. Co.*, 140 D.P.R. 673 (1996), resolvimos que, *cuando se le ha enviado una reclamación a una aseguradora,* ésta tiene la obligación, conforme la doctrina de buena fe, de notificar al asegurado que no le proveerá cubierta.